Hillsborough,
No. 4709.

THERESA E. PEPIN *v.* ROBERT BEAULIEU.

Argued April 7, 1959.

Decided May 21, 1959.

*Craig & Craig* (*Mr. William H. Craig, Jr.* orally), for the plaintiff.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *Malcolm Mecartney* (*Mr. Mecartney* orally), for the defendant.

*McLane, Carleton, Graf, Greene & Brown* (*Mr. Brown* orally), as *amici curiae*.

WHEELER, J. On the night of the accident shortly before 9:00 P. M., the plaintiff was riding as a passenger in a motor vehicle owned by her and being operated by her husband. It was snowing lightly and the roads were wet and slippery. They had previously stopped for plaintiff's brother and were proceeding southerly on South Willow Street intending to pick up the brother's "girl friend" who lived on the easterly side of South Willow Street beyond Martin Street. Plaintiff's operator made a righthand turn into Martin Street, backed out into South Willow Street in a southerly direction 25 to 50 feet and pulled ahead to the curb on the right-hand side of the street heading north and stopped the motor vehicle. The lights were on. During the process of backing up, plaintiff's operator looked several times north and south but observed no other vehicles. He had an unobstructed view of approximately one thousand feet to the south.

After stopping the motor vehicle, he started to open the door and for the first time observed the lights of a defendant's car coming from the south about 125 feet away. He closed the door and told the passengers to "brace up" and the vehicle was immediately struck a hard blow in the rear. There was no other traffic on the highway at the time, and the defendant had ample room to pull out and pass plaintiff's vehicle.

The blow "snapped [plaintiff's] neck back and forth." No immediate ill effect was experienced, but the next day she felt a pain in her back and later a pain below the shoulder blade. She consulted an orthopedic surgeon who took X-rays, which were negative, and, pursuant to his advice, took certain corrective exercises. The pain persisted into May following the accident when she was discharged by the orthopedic surgeon. The "aches

or pains" continued, and she consulted two chiropractors who administered certain treatments which temporarily relieved the pain. She last consulted a chiropractor in December, 1957. The plaintiff attempted to work at Lamex in February, 1957, but after two and one-half months was compelled to give up because of pains in her back. At this employment she earned approximately fifty to fifty-five dollars per week.

The defendant's principal contention is that the plaintiff's operator was contributorily negligent as a matter of law in failing to see the defendant's motor vehicle approaching as he backed out of Martin Street and across South Willow Street.

Admittedly the plaintiff's operator had a view of at least one thousand feet to the south, and he failed to see defendant's car approaching until shortly before it struck his motor vehicle. The fact that plaintiff's operator did not take an efficient look or "was careless in the manner he looked" (*Niemi* v. *Railroad,* 87 N. H. 1, 3) does not necessarily under the circumstances of this case preclude a finding that he exercised due care. It is true there was evidence from which a jury could find he was negligent, but from all that appears in the record, the accident would have occurred whether his car was parked, as it was, for several seconds, or for several days. The burden was upon the defendant to establish that plaintiff's operator's negligence was causal. It was findable that the accident would have occurred if he had reached his parking position from a course that did not involve turning the vehicle about. It was not error to submit the question of contributory negligence to the jury. *Cf. Colburn* v. *Normand,* 96 N. H. 250.

Defendant further contends it was error to allow the testimony of the chiropractor to go to the jury because it was contradictory to plaintiff's other expert, "inaccurate" and "based on such inferior and erroneous knowledge that it was an abuse of the Court's discretion in permitting the jury to consider it."

Plaintiff's chiropractor testified, in response to a hypothetical question, that the cause of plaintiff's complaint was the automobile accident. Insofar as it may be argued that there was a disagreement between plaintiff's medical expert and the chiropractor, the witnesses were not basing their opinions concerning the plaintiff's injuries on the same region of her back. The medical expert found complaints of pain in the neck or upper dorsal spine, whereas the chiropractor testified there was trouble in the fifth dorsal vertebra.

We cannot say that this testimony was "so obviously improbable or preposterous, as to require that the verdict be set aside." *Colburn* v. *Normand, supra,* 254. If there was any discrepancy or failure on the part of plaintiff's experts to agree *in toto,* it went to the weight of the evidence, and it was for the jury to decide how much of the evidence to accept or reject. The Court properly charged the jury that they must find on the balance of probabilities that plaintiff's injuries resulted from defendant's wrongful act.

The defendant excepted to the submission of the issue of lost wages to the jury as an element of damages. The Court properly charged the jury that in order to recover for loss of wages the plaintiff would have to prove that she probably would have worked but for the accident, that she was prevented from working because of the accident, and further that she would have to establish the amount of wages lost during this period.

We are of the view that there was sufficient evidence upon which a jury could find that the plaintiff did lose wages as a result of the accident and the amount thereof. *Dowling* v. *Shattuck,* 91 N. H. 234.

The plaintiff was employed at MKM Hosiery Mills in 1955 and left six months before her child was born. Five months after the child's birth, she commenced work at Sibulkin Shoe Co., where she continued to work until two days before the accident. In February, 1957, following the accident, she secured employment at Lamex, a plastic manufacturing concern, running a plastic injector molding machine. At this employment her average pay was fifty to fifty-five dollars per week. This employment was terminated because of pains in her back.

Although the Court instructed the jury that the plaintiff could not recover for any loss of wages after Dr. Haggerty discharged her as a patient in May, 1956, evidence of her earnings after that date was competent on the question of what her average pay probably would have been during the period of unemployment occasioned by the accident. In view of the special damages including the damage to the plaintiff's automobile, her lost wages and her pain and suffering, the verdict cannot be set aside as excessive as a matter of law.

The Court below reserved and transferred without ruling the question raised by the plaintiff's motion that interest be allowed on the verdict from the date of the writ pursuant to the provisions of RSA 524:1-b (supp.) which provides; "INTEREST FROM DATE OF

WRIT. In any action in which a verdict is rendered or a finding made for pecuniary damages for personal injuries to the plaintiff, or for wrongful death or for consequential damages, or for damage to property, there shall be added by the clerk of court to the amount of damages interest thereon from the date of the writ, even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law. This section was approved July 1, 1957, and became effective August 30, 1957. At the same time a new section 1-a was enacted which provided in other cases for interest to run from the time of instituting suit in the absence of any demand prior to the institution of any suit in actions on a debt or account stated or where liquidated damages are sought. These enactments did not purport to repeal any existing statutes but were supplemental to RSA 524:1 providing for interest from the date of verdict to the date of judgment.

The defendant contends that the statute has no retrospective application since it is silent on the matter and further argues that there is a well-established principle in statutory construction creating a presumption in the form of prospective operation of a statute in the absence of an expressed intent to the contrary.

The undoubted purpose of the statute was to accelerate settlement of cases and it seems proper to assume the existence of a legislative awareness of pending cases which had not been reduced to final judgment, verdict or decree. It is our view that in order to effect the legislative purpose it was clearly intended that the statute should apply to actions and causes of action in which a verdict or finding should be returned subsequent to the effective date of the statute. *Cf. Murphy* v. *Railroad,* 77 N. H. 573. However, the statute should not be interpreted to apply to cases in which judgment has been entered whether before or after the effective date of the statute, because this would defeat the purpose of the act.

The presumption that a statute applies prospectively only is reversed when its purpose is remedial or a contrary intent is shown. See 82 C. J. S., 993; 50 Am. Jur. 505. It was early held that "every statute, which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective . . . . " *Woart* v. *Winnick,* 3 N. H. 473, 479. However, a retrospective statute does not contravene the provision of *Art.* 23d, Bill of

Rights, N. H. Constitution, if it affects the remedy only and is not oppressive or unjust. *Wallace* v. *Stearns,* 96 N. H. 367, 369.

The allowance of interest in this jurisdiction from the date of the injury or loss is neither new nor novel. It has long been recognized that injustice results if interest, even in the case of unliquidated damages, cannot be allowed from the date of the injury. *Thompson* v. *Railroad,* 58 N. H. 524, 525.

An examination of the authorities in this field of the law reveal little else except a degree of confusion on this problem which to some extent has existed in this jurisdiction. However the more recent cases support the view that in awarding full compensation even in cases of unliquidated damages account must be taken of interest for the period between the damage and award. See anno. 36 A. L. R. (2d) 337. *Emery* v. *Company,* 89 N. H. 165. *Cf. Davenport* v. *Company,* 92 N. H. 194; *Lemire* v. *Haley,* 93 N. H. 206; *Firemen's Insurance Co.* v. *Houle,* 96 N. H. 30, 34.

If the statute may be deemed retrospective in character we are of the view that it does not take away or impair vested rights theretofore acquired, create a new obligation, impose a new duty or attach a new disability in respect to past transactions. *Woart* v. *Winnick, supra.* In short the statute "merely provid[ed] a new remedy for an existing right" (*Avery* v. *Bowman,* 40 N. H. 453, 456) and is only declarative of the common law.

*Defendant's exceptions overruled; case remanded.*

All concurred.