Delores **HARDY**, an infant, by **Louise Hardy** and **James Hardy**, her parents and next friends, and **Louise Hardy** and **James Hardy**

v.

**REKAB, INC.**, a corporation trading and doing business as **Glen Echo Amusement Park**, and **Frank Hrubetz & Company, Inc.**, a corporation.

**REKAB, INC.**, a corporation trading and doing business as **Glen Echo Amusement Park**, Cross-Claimant,

v.

**FRANK HRUBETZ & CO., Inc.**, a corporation, Cross-Defendant.

Civ. No. 17408.

United States District Court
D. Maryland.

March 31, 1967.

Jacob A. Stein, Silver Spring, Md., for plaintiffs.

Albert E. Brault, Rockville, Md., and Manuel J. Davis, Washington, D.C., for Rekab, Inc.

J. Joseph Barse, Rockville, Md., for Frank Hrubetz & Co., Inc.

FRANK A. KAUFMAN, District Judge.

Plaintiffs, a minor child who brings this action by her parents and next friends, and her parents who are suing individually, seek monetary damages for and damages related to and growing out of, injuries sustained by the minor plaintiff on July 27, 1964, as a result of a ride on a "Paratrooper," an amusement concession operated at Glen Echo Amusement Park in Maryland.[1] Joined as defendants in this action are Rekab, Inc. (Rekab), a Maryland corporation which owned and operated Glen Echo Amusement Park on the date of the alleged injury, and Frank Hrubetz & Co., Inc. (Hrubetz), an Oregon corporation which manufactured and sold the Paratrooper to Kebar, Inc. (Kebar), Rekab's predecessor in interest.[2]

---

1. According to plaintiffs' complaint, the "Paratrooper" was a "ride or device consisting of a revolving circle of seats approximately sixty (60) feet in diameter with a lifting device which raised the circle approximately thirty-five (35) feet above the ground at approximately a forty-five (45) degree angle." Plaintiffs allege in their complaint that the minor plaintiff purchased, presented and relinquished a ticket for admission to a ride on this device and took her seat. Plaintiffs further assert that the device was put in motion but after revolving several times broke and collapsed, throwing the minor plaintiff to the ground.

2. By letter dated July 21, 1966, a copy of which is in the official Clerk's file in this case, counsel for defendant Rekab advised counsel for plaintiffs as follows:

"Prior to 1964, the Glen Echo Amusement Park was owned and operated by Kebar, Inc.; the sole stockholder of Kebar, Inc., was Rekab, Inc., both Maryland corporations. On December 30, 1963, articles of dissolution of Kebar, Inc., were filed with the Maryland State Department of Assessments and Taxation. Dissolution, therefore, was effected December 30, 1963. All of the assets of Kebar, Inc., were transferred to Rekab, Inc., and the new corporation assumed all of the corporate debts of Kebar, Inc., as of the date of dissolution.

"I checked the records of the Department of Licenses and Inspections, and was advised that application for license to operate Glen Echo was filed by Rekab, Inc., on March 29, 1964, and was issued on April 22, 1964, to expire March 29, 1965. It is obvious, therefore, that Kebar, Inc., was neither the owner nor the operator of Glen Echo in July, 1964, but that the owner and operator was Rekab, Inc."

The complaint in this case was originally filed (on June 24, 1966) against Hrubetz and Kebar. On October 27, 1966, by order of this Court, without opposition from either of the two defendants, plaintiffs filed an amended complaint pursuant to which plaintiffs, *inter alia*, deleted Kebar as a defendant and substituted Rekab in

Plaintiffs' complaint states the following causes of action against Hrubetz in six[3] separate counts: (1) breach of an implied warranty that the Paratrooper was fit for use for its intended purpose; (2) breach of a warranty of merchantable quality; (3) breach of an express warranty by Hrubetz to Rekab and others that the device was safe for those who chose to ride it; (4) negligence of Hrubetz in assembling, operating, repairing, servicing and inspecting the device and in failing to warn the minor plaintiff of a defective and dangerous condition which was known or should have been known to both defendants; (6) negligence of Hrubetz in designing, constructing, manufacturing and assembling the device and in failing to replace a defective part; and (7) strict liability because of the hazardous nature of the device.

The jurisdiction of this Court is asserted on the basis of diversity of citizenship. Rekab was served in Maryland and has filed an answer denying liability. Personal service of a summons and a copy of plaintiffs' complaint was made on Hrubetz at its offices in Salem, Oregon. Hrubetz has moved to quash this service of process. Hrubetz' motion to quash is the subject of this opinion.

Rule 4(e) of the Federal Rules of Civil Procedure provides, in part, as follows:

Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state * * * service may * * * be made under the circumstances and in the manner prescribed in the statute or rule.

Under the authority provided by this rule, plaintiffs in their amended complaint[4] rely upon subsections (a) (1), (3) and (4) of Article 75, Section 96 of the Maryland Code (the Maryland "long arm" statute), which became effective June 1, 1964.[5] That statute reads, in part, as follows:

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

(1) transacting any business in this State;

* * * * * *

(3) causing tortious injury in this State by an act or omission in this State;

(4) causing tortious injury in this State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in this State or derives substantial revenue from food or services used or consumed in this State;[6]

* * * * * *

its place. See note 4 infra. On January 11, 1967, Rekab filed an answer to the amended complaint.

3. Plaintiffs' complaint is in seven separate counts. The fifth count of the complaint states a cause of action based on the alleged negligence of Rekab and does not relate to Hrubetz. The first, second, third, fourth and seventh counts are stated *against both defendants*. The sixth count is stated only against defendant Hrubetz.

4. Plaintiffs' original complaint refers to Article 75, § 96(a) (3), (4) of the Annotated Code of Maryland. Plaintiffs' amended complaint asserts Section 96(a) (1) of article 75 as an additional basis for service. As provided in Federal Rule 15(c), the amendment relates back to the

date of the filing of the original complaint.

5. 7 Md.Ann.Code art. 75, §§ 94–100 (Supp. 1965).

6. 7 Md.Ann.Code art. 75, §§ 96(a) (1), (3), (4) (Supp.1965). The term "person," as used in the statute, includes "a corporation, partnership, association, or any other legal or commercial entity, whether or not a citizen or domiciliary of this State and whether or not organized under the laws of this State." 7 Md.Ann. Code art. 75, § 94 (Supp.1965). Section 97 of Article 75 provides that "When the exercise of personal jurisdiction is authorized by this subtitle, service may be made outside this State." 7 Md.Ann. Code art. 75, § 97 (Supp.1965).

Defendant Hrubetz contends that the Maryland long-arm statute is not applicable to it, and that if the act is so applicable, it should not be retroactively applied as herein allegedly sought.

## I.

### APPLICABILITY

From the affidavits which have been filed in this case the following appear to be uncontroverted facts. In late 1962 Hrubetz negotiated with Kebar for the sale of a Paratrooper manufactured by Hrubetz. The negotiation was conducted either in Illinois or Florida but not in Maryland. Hrubetz did not then maintain, and never has maintained, an office in Maryland or in any state other than Oregon. On December 26, 1962, a sales contract with Kebar was accepted by Hrubetz in Oregon. The Paratrooper was shipped from Oregon to Maryland in February or March of 1963 and delivered to the Glen Echo Amusement Park either (a) by common carrier, or (b) partly on a truck owned and operated by Hrubetz and partly by Merchant Transport & Storage Company, or (c) by a combination of (a) and (b). At the time of delivery a representative of Hrubetz arrived at Glen Echo Amusement Park, supervised and actively participated in installation of the ride by the Rockville Crane and Rental Company, and supervised the starting (and checked operations) of the device preparatory to the Park's March 28 opening date for the 1963 season. Kebar paid Hrubetz in full for the Paratrooper shortly after its shipment or delivery.

It also appears from the affidavits that in addition to the Paratrooper sold to Kebar in 1963, Hrubetz had in 1957 sold Kebar a "Round-Up" amusement ride which was delivered to the Glen Echo Amusement Park on a Hrubetz truck by a Hrubetz employee. The affidavits also disclose that Hrubetz sold a Model #30 Round-Up in 1959 to Marilyn Amusements, 6000 Gwynn Oaks, Baltimore, Maryland; a Paratrooper in 1959 to Mr. Buster Gordon of Rockville, Maryland; a Portable Paratrooper in 1960 to Mr. Norman Shapiro who had a mailing address in Baltimore; and a Meteor Ride in 1962 to Mr. Jake Shapiro in Baltimore, which ride was to be used in Canada. With regard to the sales to Marilyn Amusements, Norman Shapiro and Jake Shapiro, the affidavits disclose that Hrubetz was contacted by the vendees outside of Maryland and that the sales and shipments were made from Hubretz' Oregon office and plant. The affidavits disclose no such details in connection with the sale to Buster Gordon of a Paratrooper in 1959; nor do the affidavits disclose whether delivery or installation of the devices sold to Marilyn Amusements, either of the Messrs. Shapiro or Mr. Gordon were made by, or under the supervision of, Hrubetz. Counsel for defendant Hrubetz, in his memorandum dated December 16, 1966, filed in support of the motion to quash, has stated that all of the five aforesaid amusement park rides sold in 1957, 1959, 1960 and 1963 were "delivered" in or to Maryland. There were no other sales made by Hrubetz "to the State of Maryland in years."[7]

---

**7.** Counter-affidavit of Frank Hrubetz made September 27, 1966.

    In a Memorandum, in support of the Motion to Quash, dated December 16, 1966, counsel for defendant Hrubetz stated:

    "* * * Only two possible, factual conflicts are raised by the Affidavits filed by defendant and plaintiff:

    1. The plaintiff's Affidavit (executed by Emory Crouch) [Glen Echo's superintendent] makes the general statement that Hrubetz has sold and installed amusement rides at Marshall Hall Park, Prince George's County. The Hrubetz Affidavit of September

27, 1966, denies knowledge of Marshall Hall Park and avers that those sales listed therein are the only ones which it has made in Maryland since 1957. * * *

    2. The original Hrubetz Affidavit of August 3, 1966, states that the amusement park ride in question was shipped, by common carrier, to Kebar, while Mr. Crouch's Affidavit states that at least a portion of the ride was delivered on a Hrubetz owned truck, by a Hrubetz employee and that a Hrubetz employee supervised and participated in installing and checking the operation of the ride before it was put

■ Plaintiffs allege tortious injury in Maryland by Hrubetz' negligence in assembling (fourth and sixth counts) and in repairing and servicing (fourth count). Section 96(a) (3) of Article 75 is therefore clearly applicable with regard to those two counts. Moreover, the application of section 96(a) (3) to Hrubetz on the basis of the facts alleged in this case is clearly constitutional. See Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193 (1951), cited with approval in McGee v. International Life Ins. Co., 355 U.S. 220 at 223 n. 2, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957); and see the discussion in Auerbach, The "Long Arm" Comes to Maryland, 26 Md.L.Rev. 13, 39–40 (1966).

■ In connection with the first, second, third and seventh counts, it is relevant to note that during the period 1957 to 1963 Hrubetz sold five amusement devices for use in Maryland [8] and that while all negotiations and contract acceptances took place largely or solely outside of Maryland, in at least two instances delivery was made in Maryland, at least partially by Hrubetz; and also that in at least one instance a Hrubetz representative or employee supervised the installation in Maryland. The Maryland Court of Appeals in Gilliam v. Moog Industries, Inc., 239 Md. 107, 111, 210 A.2d 390, 392 (1965), stated:

It seems clear that the purpose of the Legislature in enacting these new provisions [the long arm statute] was to give the courts of the State personal jurisdiction over all out of state persons and corporations which con-

stitutionally could be reached as having had sufficient Maryland contacts, under the jurisdictional yardstick established by the Supreme Court in cases such as International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 [1945]; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; and Hanson v Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 [1958].

The primary jurisdictional yardstick established by the United States Supreme Court in the cases cited by the Maryland Court of Appeals is that a defendant be found to "have certain minimum contacts with it [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The Maryland Court of Appeals has specifically applied the International Shoe test in interpreting the New York counterpart to section 96(a) (1) of the Maryland statute.[9] Van Wagenberg v. Van Wagenberg, 241 Md. 154, 164, 170, 215 A.2d 812, 817, 820 (1966).

In McClung v. Kebar, Law No. 19,141, Cir. Ct. for Montgomery County, Maryland, Sept. 28, 1966, a minor by his mother and next friend brought suit against the same defendants sued herein. That suit was for injuries sustained on the Paratrooper ride at Glen Echo Amusement Park on or about July 27, 1964 and apparently arises out of the same occurrence which forms the factual basis of this case. In denying Hrubetz' motion to quash service of process in that case,

---

into operation, when the amusement park opened on March 28, 1963 * * *."

In the absence of any counter-affidavit on behalf of defendant Hrubetz denying Mr. Crouch's statements concerning Hrubetz' participation in the installations and checking of the operation of the Paratrooper, same are taken to be true. The conflicts in the statements of Mr. Hrubetz and Mr. Crouch with regard to dates and the possible inconsistencies with regard to delivery are not significant for

purposes of this opinion. In view of the lack of any material factual dispute, the Court does not reach the question of which party has the burden of proof of relevant facts in the context of defendant Hrubetz' motion to quash.

8. Including the one which is the subject of the instant suit—six if the sale to a Maryland purchaser for use in Canada is counted.

9. See note 12 infra.

Judge Mathias of the Circuit Court for Montgomery County, Maryland, concluded that—

> Hrubetz would appear to have had, with the State of Maryland, such minimum contact as would give this State jurisdiction in this cause without offending traditional notions of fair play and substantial justice.

■ In view both of the number and character of Hrubetz' contacts with the State of Maryland, this Court holds that service of the complaint was properly made upon Hrubetz under subsection (1) of section 96(a) with regard to all of the counts as well as, with regard to counts four and six, and perhaps seven, under one or both of subsections (3) and (4) of section 96(a).[10]

## II.

### RETROACTIVITY

The manufacture, delivery and installation of the Paratrooper took place prior to the effective date of the Maryland "long arm" statute. That date was June 1, 1964. The minor plaintiff's injuries were allegedly sustained on July 27, 1964. The question therefore arises as to whether service of process upon Hrubetz in this case involves the retroactive application of the statute.

In Gilliam v. Moog Industries, Inc., supra, the Maryland Court of Appeals discussed but did not decide the issue of retroactivity. Suit in that case was instituted prior to the effective date of the "long arm" statute. The statute, however, became effective while the case was pending and counsel argued on appeal that the defendant was subject to suit under its provisions. The Maryland Court of Appeals affirmed the trial judge's action in quashing the writ of summons and held that the question of the applicability of the "long arm" statute had not been properly presented to the trial court and was not before the appellate court on review. However, in the course of its opinion, the Court stated:

> The cases and the writers have differed as to whether statutes similar to those enacted by Ch. 95 of the Laws of 1964 [which added sections 94 to 100, inclusive, to article 75 of the Maryland Code], which have enlarged the bases for personal jurisdiction over out of state individuals and corporations, are to be given retrospective or prospective operation, both on the question of the effectiveness of service of process prior to the effective date of such statutes and on the merits when the cause of action accrued before the effective date. See Note,

---

10. The question arises as to whether the effectiveness of service of process under section 96(a) (3) with regard to the fourth and sixth counts insofar as those counts concern alleged acts or omissions in Maryland operates to bring Hrubetz within the personal jurisdiction of this Court as to the other counts. Subsection (b) of section 96 of Article 75 provides:

> When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

The Maryland "long arm" statute is based upon the Uniform Interstate and International Procedure Act. The Commissioner's note states [at 9B Uniform Laws Ann. 87 (Supp.1965)]:

> The concept of cause of action * * * should be broadly construed to cover an entire transaction so that,

when possible, the entire dispute may be settled in a single litigation. Subdivision (b) is designed to prevent assertion of independent claims unrelated to any activity described in subdivision (a) of section 1.03.

This comment hardly appears to answer the question of whether the establishment of personal jurisdiction over Hrubetz under section 96(a) (3), and perhaps section 96(a) (4), with regard to counts four and six and perhaps seven operates to establish such jurisdiction for the purposes of litigating all of the causes of action alleged by plaintiffs against Hrubetz. The question would appear to be one of fresh impression under the Maryland "long arm" statute. However, that issue need not be resolved in this case in view of the Court's holding concerning the applicability of subsection (a) (1) of section 96 of Article 75.

Retroactive Expansion of State Court Jurisdiction over Persons, 63 Col.L. Rev. 1105; and compare Restatement, Second, Conflict of Laws, Secs. 84 Comment e, 84a Comment d, 85 Comment d (Tentative Draft No. 3, 1956); and McGee v. International Life Ins. Co., supra. See Simonson v. International Bank, 16 A.D.2d 55, 225 N.Y.S. 2d 392; affirmed, 14 N.Y.2d 281, 251 N.Y.S.2d 433, 200 N.E.2d 427; Nevins v. Revlon, Inc., (Super.Ct.Conn.), 182 A.2d 634; Focht v. American Casualty Company, 103 Ga.App. 138, 118 S.E.2d 737; Johnson v. Baldwin (S.C.), 53 S. E.2d 785. [239 Md. at 111, 210 A.2d at 392–93].

In *Gilliam,* as has been noted, the cause of action arose and the suit was actually brought before the effective date of the "long arm" statute. In the case at bar the cause of action accrued on July 27, 1964, fifty-seven days after the effective date of the statute.

In McGee v. International Life Ins. Co., supra, plaintiff obtained a judgment in or after 1950 in a California state court against a Texas insurance company under an insurance contract negotiated through the mails in 1948. California jurisdiction was asserted over the defendant insurance company pursuant to a California statute subjecting foreign corporations to suit in California on insurance contracts with residents of that State even though such corporations could not be served with process within the borders of California. The California statute became law in 1949, after the insurance contract had been entered into, and the insurance company contended on appeal that application of the statute to that contract improperly impaired the obligation of the contract. The Supreme Court of the United States, however, in rejecting that argument, held:

> We believe that contention is devoid of merit. The statute was remedial, in the purest sense of that term, and neither enlarged nor impaired respondent's substantive rights or obligations under the contract. It did nothing more than to provide petitioner with a California forum to enforce whatever substantive rights she might have against respondent. At the same time respondent was given a reasonable time to appear and defend on the merits after being notified of the suit. Under such circumstances it had no vested right not to be sued in California. [355 U.S. at 224] 78 S.Ct. at 201.

A commentator, writing in 1963 about the New York "long arm" statute,[11] a statute which is quite similar to the Maryland statute,[12] stated as follows:

> Will the new [New York "long arm"] statute be held to apply to a non-resident who performed *any* of the

---

11. N.Y.Civ.Prac.Law & Rules § 302 (McKinney 1966 Supp.).

12. Section 96(a) (1) of the Maryland Act is verbatim the same as section 1.03(a) (1) of the Uniform Act which, in turn, is derived from the Illinois Act. Ill.Stat. Ann. ch. 110, § 17(1) (a) (1956); see Commissioner's Note, 9B Uniform Laws Ann. 84 (Supp.1965). The New York provision is substantially the same. N.Y. Civ.Prac.Law & Rules § 302(a) (1) (McKinney 1966 Supp.).

Section 96(a) (3) of the Maryland Act differs somewhat from the Uniform Act. See Uniform Interstate & International Procedure Act [hereinafter cited as Uniform Act] § 1.03(a) (3), 9B Uniform Laws Ann. 84 (Supp.1965), and Commissioner's Note, 9B Uniform Laws Ann. 85 (Supp.1965). The comparable New York and Illinois statutes are closer to the Uniform Act. Ill.Stat.Ann. ch. 110, § 17(1) (b) (1956); N.Y.Civ.Prac.Law & Rules § 302(a) (2) (McKinney 1966 Supp.).

Section 96(a) (4) of the Maryland Act is, with minor variations in language, the same as the Uniform Act. See Uniform Act § 1.03(a) (4), 9B Uniform Laws Ann. 84 (Supp.1965). The basic New York enactment is also substantially the same. N.Y.Civ.Prac.Law & Rules § 302 (a) (3) (i) (McKinney 1966 Supp.). The Uniform Act is more restrictive than the interpretation given the Illinois statutes by the Illinois Supreme Court in Gray v. American Radiator & Stan. San. Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). Commissioner's Note, 9B Uniform Laws Ann. 85–86 (Supp.1965).

stated acts prior to September 1, 1963, the effective date of the [New York] statute? There can be no serious doubt that if the cause of action arises after September 1, 1963, the statute may constitutionally apply even where, for example, the action arises out of the defendant's transaction of business prior to that time. This was squarely held in *McGee* [i. e., McGee v. International Life Ins. Co., supra] where the Supreme Court sustained the application of the California statute to a defendant who had issued an insurance policy to a California resident many years prior to the enactment of the statute. [McLaughlin, Practice Commentary 7B N.Y.Civ.Prac. Law & Rules 435 (McKinney 1963) (emphasis added)].

In Simonson v. International Bank, 14 N.Y.2d 281, 251 N.Y.S.2d 433, 200 N.E. 2d 427 (1964), the New York Court of Appeals stated:

In short, with the possible exception of cases in which the acts serving as the predicate for jurisdiction under the new section [of the New York "long arm" statute] are shown to have been carried out in justifiable reliance on the prior law * * * CPLR § 302 [the New York counterpart to article 75, section 96 of the Maryland Code] has retroactive effect to the extent of embracing suits instituted after its effective date but based on previously accrued causes of action. [251 N.Y.S.2d at 440, 200 N.E.2d at 432].[13]

In Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957), the Supreme Court of Illinois held the Illinois "long arm" statute retroactively applicable to a cause of action which accrued before the effective date of the enactment and stated:

"The law applicable in the State of Illinois is that there is no vested right

in any particular remedy or method of procedure, and that, while generally statutes will not be construed to give them a retroactive operation unless it clearly appears that such was the legislative intent, nevertheless, when a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether the suit has been instituted or not, unless there is a saving clause as to existing litigation. * * * This statute embodies no saving clause as to existing litigation. It merely establishes a new mode of obtaining jurisdiction of the person of the defendant in order to secure existing rights, which are unaffected by this amendment. As a change which affects merely the law of procedure, there can be no valid objection to enforcing the existing cause of action under this new procedure." See also Orlicki v. McCarthy, 4 Ill.2d 342, 347–348, 122 N.E. 2d 513 (1954).

* * * Retrospective application of such a statute creates a problem only if that application operates unfairly against a litigant who justifiably acted in reliance on some provision of the prior law. It is difficult to imagine such a case insofar as section 17(1) (b) [the provision of the Illinois "long arm" statute which is similar to section 96(a) (3) of the Maryland statute] is concerned. Only if jurisdiction in a case such as this is regarded as founded on a bargain between the State and the nonresident, whereby consent to be sued here is given as the price of a privilege conferred, can it be thought that the exercise of jurisdiction is unfair because the consent occurred before the terms of the bar-

13. The United States Supreme Court cited the *Simonson* holding with apparent approval in United States v. First National City Bank, 379 U.S. 378, 382, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965). The New York statute was applied retroactively in accordance with *Simonson* in Longines-

Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S. 2d 8, 209 N.E.2d 68 (1965). And see the cases cited in Notes of Decisions, 7B N.Y.Civ.Prac.Law & Rules 87–88 (McKinney 1966 Supp.).

gain were known. For reasons that will be stated, we are satisfied that jurisdiction does not rest upon such a fictional consent." [11 Ill.2d at 382–383, 143 N.E.2d at 676].[14]

The extent, if any, to which the Maryland "long arm" statute should be given retroactive effect has not as yet been determined by the Maryland Court of Appeals. That issue is however raised in the instant case in which, while all of the causes of action accrued and certain of the alleged breaches of contract and certain of the negligent acts or omissions took place, or at least continued, after the effective date of the statute, nevertheless the dates of a number of the other alleged contractual defaults and tortious actions or omissions are prior to the date the statute became law. The weight of authority appears to favor retroactive application of state "long arm" statutes, at least to the extent necessary to permit service with regard to each, and every part, of all of the alleged causes of action in this case. In the *Nelson* and *Simonson* cases the highest courts of Illinois and New York have so construed the Illinois and New York statutes. The Supreme Court of the United States indicated in *McGee* that such construction is not unconstitutional. Further, there is nothing to indicate that the defendant, Hrubetz, who was a party to at least five separate sales transactions involving Maryland buyers prior to the enactment of the Maryland statute, engaged in any of those dealings, including the 1962–63 Paratrooper (Glen Echo) sale, delivery and installation, in justifi-

---

14. The general problem of retroactivity in connection with jurisdictional statutes is the subject of a lengthy commentary in Note, Retroactive Expansion of State Court Jurisdiction over Persons, 63 Colum.L.Rev. 1105 (1963). The author of that Note concludes as follows:

"It is submitted that resolution of the problems posed by jurisdictional retroactivity is primarily a legislative responsibility requiring discriminating choice among several reasonable solutions. Statutes deliberately silent on the issue may be enacted, their interpretation and application to be determined by the courts. Although this choice has the advantage of not placing the issue in the position of prominence which might invite litigation, the ambiguity of silence involves a substantial probability that, without legislative guidance, courts will continue to apply the inadequate rules of retroactivity. The statute may be made applicable only to cases in which jurisdiction is based upon conduct occurring after enactment. While this solution obviates possible frustration of reliance it precludes access to a local forum in many cases in which there would be no unfairness to defendants. Furthermore, efficient administration of justice would be hindered if the methods of service available were dependent upon the persistence of the conduct serving as the basis of jurisdiction. Provision for retroactivity in all cases, although permitting greater access to a convenient forum and being simpler to administer, has the distinct disadvantage of being potentially unfair to defendants. The difficulty of generalizing about the problems presented by each of the enumerated bases of jurisdiction cautions against expressly making some bases retroactive and others prospective. Moreover, the inherent inflexibility of indiscriminate retroactive or prospective application of any one basis of jurisdiction makes this solution undesirable.

Finally, the statute could provide for general retroactive application, but with judicial discretion not to exercise jurisdiction when to do so would be unjust. In administering such a provision the courts should weigh the considerations previously discussed favoring and opposing retroactivity. Since the inquiry will be directed to a particular case, the court will have greater latitude than would be possible were it construing a specific jurisdictional provision or the entire statute. The probable difficulty of proving actual reliance on the earlier jurisdictional law suggests that the burden resting upon defendants should not be overly demanding: in many cases it should be sufficient to show a reasonable possibility of reliance." [63 Colum.L.Rev. at 1128–29].

Retroactivity was opposed in the 1956 Tentative Draft of the Second Restatement of Conflicts of Laws. Restatement (Second), Conflict of Laws § 84, Comment e, § 84a, Comment d, § 85, Comment d (Tent.Draft No. 3, 1956) cited and quoted in 63 Colum.L.Rev. supra at 1107. Some courts have denied retroactive application. See the cases cited in Note, 63 Colum.L.Rev. supra at 1118–19.

able reliance upon the prior law. Nor does any other reason appear to support the conclusion that application of the statute in this case would be unfair to Hrubetz. The statute is basically a procedural enactment. As such, it seemingly should be applied so as to enable service to be had upon a non-Maryland defendant of a complaint which states causes of actions in contract and in tort, some of which are based upon defaults, acts or omissions of the non-Maryland defendant which occurred prior to the effective date of the statute, and others of which relate to defaults, acts or omissions which took place after the effective date of the statute. At least this result would appear to be required in a case in which all causes of action accrued after the effective date of the statute.

For the reasons stated, Hrubetz' motion to quash service of process is denied. Counsel will prepare an appropriate order giving effect to this ruling.