Carroll,
No. 6193.

PROPERTY OWNERS ASSOCIATION AT SUISSEVALE, INC. *& a.*

*v.*

PETER B. SHOLLEY *& a.*

JOSEPH CRISTINI *& a.*

*v.*

SAME.

December 7, 1971.

*Cooper, Hall & Walker* ( *Mr. George W. Walker* orally ) for plaintiffs.

*Charles F. Hartnett* ( by brief and orally ) for defendant Peter B. Sholley appearing specially.

GRIFFITH, J. The defendant Peter B. Sholley excepted to the denial of his motions to dismiss for lack of jurisdiction in both these bills in equity. His bills of exceptions were allowed and transferred by the Trial Court ( *Loughlin*, J. )

Both bills in equity were filed July 30, 1969, on behalf of lot owners and installment purchasers of lots in a development known as Suissevale in Moultonboro, New Hampshire. The allegations in the bills complain of acts during the years 1966, 1967 and 1968, when Suissevale was being developed by Suissevale, Inc. It is alleged that Peter B. Sholley was the president and major shareholder of Suissevale, Inc., until May of 1969 when the entire stock ownership of Suissevale, Inc., was sold to the defendants Speculator Realty Corp. and Bankers Credit Service Corp. Among other allegations the bills charge misrepresentation by defendant Sholley or his agents in the sale of lots and fradulent mismanagement of the corporation. It is also alleged that on June 17, 1968, Suissevale, Inc., mortgaged its property to defendant Sholley for an antecedent debt of $275,000. Plaintiffs in both cases ask for money damages and certain equitable relief against all defendants.

A real estate attachment of defendant Sholley's mortgage interest in the property was made October 17, 1969, and a trustee attachment of any debt owed defendant Sholley by Suissevale, Inc., on the same date. An order of notice to defendant Sholley was issued on November 3, 1969, and service secured by registered mail to defendant Sholley in Wellesley, Massachusetts on November 14, 1969.

Plaintiffs claim that service on defendant Sholley was properly made under RSA 510:4( supp. ). This is the so-called long arm statute and provides for jurisdiction over a nonresident who in person or through an agent transacts any business or commits a tort in this State or owns any real or personal property in this State as to " any cause of action arising from or growing out of the acts enumerated. " RSA 510:4( I )( supp. ).

While this statute provides for service of process on the secretary of state and notice to the defendant by registered mail ( RSA 510:4( II )( supp. ) ) this method is not exclusive and service " may be made in any other manner provided by law. " RSA 510:4( V ) ( supp. ). It follows that if RSA 510:4( supp. ) is applicable to this case in personam jurisdiction has been acquired over the defendant Sholley. RSA 510:8; *see Sampson* v. *Conlon*, 100 N.H. 70, 119 A.2d 707 ( 1955 ).

Service in these cases was made subsequent to August 29, 1969, the date RSA 510:4( supp. ) became effective but the acts of the defendant complained of occurred before that date. Defendant argues that to base jurisdiction on the present statute would be a retroactive application not intended by the legislature. The arguments advanced by the defendant based upon the grammar of the statute, a letter from a senator and the failure of the statute to provide for emergency immediate effectiveness are not persuasive as to the intention of the legislature. Unlike the new comparative negligence statute where it appears definite consideration was given to prospective application only ( *see* Nixon, The Actual " Legislative Intent " Behind New Hampshire's Comparative Negligence Statute, 12 N.H.B.J. 17, 20 ( 1969 ) ) it does not appear the legislature ever considered the issue.

The presumption that a statute applies prospectively is reversed when its purpose is remedial. *Pepin* v. *Beaulieu*, 102 N.H. 84, 89, 151 A.2d 230, 235 ( 1959 ). Furthermore, since service here was made after the effective date of the statute, the argument that it is being applied retroactively is correct only if it changed the substantive rights of the parties in existence before its enactment. The statute here makes no change in substantive rights. If the defendant's dealings in New Hampshire land gave rise to a cause of action they did so at the time he acted. The increased reach of our jurisdiction provided by the statute means that he must answer for his acts here rather than another forum, but his rights remain the same whether he is answering for acts committed before or after the new statute.

Our court hailed the extended jurisdiction permitted to the State by *International Shoe Co.* v. *Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 ( 1945 ) and announced our intention to exercise jurisdiction under our long arm statutes to the full extent of the constitutional limit. *Roy* v. *North American Newspaper Alliance*, 106 N.H. 92, 205 A.2d 844 ( 1964 ). Mention was there made of the intention expressed by our court many years before that we " not send our citizens to a foreign jurisdiction in quest of redress for injuries committed here. " *Libbey* v. *Hodgdon*, 9 N.H. 394, 396 ( 1838 ).

That jurisdiction under the facts here over defendant Sholley is within the constitutional limit is established by *McGee* v. *International Life Ins. Co.*, 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199 ( 1957 ). There in a similar application of a long arm statute *Black*, J., speaking for a unanimous Court said: " The statute

was remedial, in the purest sense of that term, and neither enlarged nor impaired respondent's substantive rights or obligations under the contract. It did nothing more than to provide petitioner with a California forum to enforce whatever substantive rights she might have against respondent . . . . Under such circumstances it had no vested right not to be sued in California. " 355 U.S. at 224, 2 L. Ed 2d at 226-27, 78 S. Ct. at 201-02.

We note that in the State of defendant's residence a like application of a long arm statute has recently been held to confer jurisdiction ( *Kagan* v. *United Vacuum Appliance Corp.*, 260 N.E.2d 208 ( Mass. 1970 ) and that this represents the overwhelming weight of judicial authority. *Diamond Crystal Salt Co.* v. *P. J. Ritter Co.*, 419 F.2d 147 ( 1st Cir. 1969 ); Annot., 19 A.L.R.3d 138 ( 1968 ).

*Defendant's exceptions overruled; remanded.*

GRIMES, J. did not sit; the others concurred.