Sewell D. LOOK and Nancy Look of Columbia Falls, County of Washington, State of Maine

v.

**HUGHES TOOL COMPANY.**

Sewell D. LOOK and Nancy Look of Columbia Falls, County of Washington, State of Maine

v.

**HUGH B. WILLIAMS MANUFACTURING CO.**

Sewell D. LOOK and Nancy Look of Columbia Falls, County of Washington, State of Maine

v.

**COMMERCIAL SHEERING AND STAMPING CO.**

**Civ. A. Nos. 73–211 to 73–213.**

United States District Court, D. New Hampshire.

Dec. 11, 1973.

Bernard J. Robertson, Exeter, N. H., for plaintiffs.

E. Paul Kelly, Sheehan, Phinney, Bass & Green, Manchester, N. H., for defendants.

## MEMORANDUM OPINION AND ORDER

BOWNES, District Judge.

This case arises out of an accident which occurred at a utility pole construction site in Deerfield, New Hampshire, on or about September 17, 1969. Plaintiff, an employee of the construction company, was hurt while working on a "digger"—a large mechanical hole-making device permanently mounted on a truck. He is suing the company that designed, manufactured, and distributed the digger in negligence and strict liability.[1] Defendant has moved for dismissal based on lack of *in personam* jurisdiction.

### A. THE FACTS

At the time of the accident, plaintiff was a resident of New Hampshire (*see* plaintiff's affidavit) and an employee of the Seaward Construction Co., the contractor who was erecting the utility poles. Subsequent to the accident, plaintiff moved out of New Hampshire, and at the time this action was instituted, he was a resident of Maine.

Seaward is a Maine corporation with its principal place of business in Kittery, Maine. Sometime prior to the accident, Seaward ordered a digger from the defendant. The digger was sold to Seaward f. o. b. Dallas, and Seaward arranged for its shipment. Charles Bothwell, sales representative for Hughes, testified that Seaward had ordered the digger for use in the construction of power lines in Pennsylvania.

Defendant Hughes Tool Company is incorporated under the laws of the State of Delaware and has its principal place of business in Texas. Hughes is a large company which does business all over the world. It is one of the world's largest manufacturers of drilling bits and tool joints. Testimony of Bothwell. Although Hughes Tool owns no property in New Hampshire and is not qualified to do business here, Bothwell admitted that

---

1. Plaintiff is also suing the company which designed the control panel on the digger.

the diggers could be used anywhere and had probably been sold in about 98% of the states. In addition, Hughes Tool employs one Jim Blakinship, a New England sales representative based in Pennsylvania. Bothwell admitted that Blakinship visited New Hampshire in the course of his work, but he could not say how often or for how long. Bothwell testified that, to his knowledge, Hughes Tool has taken no orders in New Hampshire, has no business outlets in New Hampshire, has done no advertising in New Hampshire, and has not been a party to any other litigation in New Hampshire. I accept Bothwell's testimony for purposes of this opinion.

Plaintiff's only witness was Samuel Richardson Read, a professor of business and economics at the University of New Hampshire. Read had investigated the corporate structure and financial transactions of the Hughes Tool Company, Inc. He corroborated the fact that Hughes Tool is a very large company. In Read's opinion, it would have been reasonably foreseeable that a digger sold to a Kittery, Maine, firm would be used in New Hampshire. Although Bothwell indicated that he was unaware of Kittery's proximity to New Hampshire, I take judicial notice of the fact that Seaward does extensive business in New Hampshire.

## B. THE CONCEPTUAL FRAMEWORK

Defendant's jurisdictional attack is mounted on two fronts. Its first claim is that there is no section in the New Hampshire jurisdictional statutory scheme which confers *in personam* jurisdiction over the Hughes Tool Company. The two relevant sections are NH RSA 300:14, which was amended in 1971 (prior to the commencement of this action, but subsequent to the accident), and NH RSA 300:11. In 1969 when the accident occurred, NH RSA 300:14 read in pertinent part as follows:

> If a foreign corporation . . . commits a tort in whole or in part in New Hampshire *against a resident of New Hampshire,* such act[s] shall be deemed to be doing business in New Hampshire by such foreign corporation . . . . [Emphasis added.] NH RSA 300:14.

The 1971 amendment deleted the underlined words. It is defendant's position that plaintiff may not proceed under the 1971 amendment because it would be improper to apply it retroactively and that since plaintiff is now a nonresident, he cannot proceed under the older version of NH RSA 300:14, because that statute applied only to residents.

Finally, defendant maintains that if jurisdiction over Hughes Tool is to be invoked, it must be done under NH RSA 300:11. However, section 300:11 requires that defendant be "doing business" before *in personam* jurisdiction can be exercised over it; and as the hearing demonstrated, Hughes Tool Company does not do any business in New Hampshire.

As its second line of defense, Hughes Tool claims that even if New Hampshire has granted its courts the power to hear this case,

> The commission of a tort, without any other contact in New Hampshire on the usual "doing-business" theory is pushing due process beyond the constitutional limits set forth in the New Hampshire cases . . . . Defendant's Brief at 4.

Plaintiff, of course, maintains that New Hampshire courts have the statutory power to decide this case and that such power is consistent with the due process clause of the Fourteenth Amendment.

## C. THE MERITS

1. *The Constitutional Question of Jurisdiction.* The question to be resolved first is whether New Hamp-

shire courts [2] *can*, consistent with the due process clause of the Fourteenth Amendment, assume jurisdiction over the defendant. The question is one of federal law and, fortunately, it has already been answered. In Gill v. Fairchild Hiller Corp., 312 F.Supp. 916 (D. N.H.1970), this court ruled that the designers and manufacturers of an airplane [3] which crashed in New Hampshire were subject to the jurisdiction of this court. Here, as in *Gill*, defendant takes the position that

> . . . before the plaintiffs can obtain jurisdiction they must show that the defendants had certain minimum business contacts with New Hampshire and that the maintenance of these actions in this forum will not offend traditional notions of fair play and substantial justice. *Gill, supra*, at 917.

The argument has no more weight in this case than it did in *Gill*. Jurisdiction here is predicated on the commission of a series of acts which

> . . . because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit. International Shoe Co. v. State of Washington, 326 U.S. 310, 318, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945).

The touchstone of the *International Shoe* decision is that due process requires that a corporation have such minimal

> contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. International Shoe Co., *supra*, 326 U.S. at 317, 66 S.Ct. at 158.

*International Shoe* and its progeny have long since discarded the obfuscatory fictions on which jurisdiction was once based. Notions of fair play and reasonableness are now the cornerstones on which we build.

■ In this case defendant is a manufacturer of gigantic proportions. By its own admission, its products are distributed in 98% of the states. [4] Moreover, the diggers are mounted on a mobile unit when sold. Defendant "must know that it is probable that the [digger] will be [used] all over the United States, if not all over the world." *Gill, supra*, 312 F.Supp. at 918; *see* Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). In structuring its business relations, there is no suggestion that Hughes Tool relied on immunity to suit in New Hampshire.

> The risk of suit being brought against them in any one of the fifty states is one of the risks that the defendants must bear because of the nature of their business. *Gill, supra*, 312 F. Supp. at 918.

Moreover, this is not a case like Seymour v. Parke, Davis & Co., 423 F.2d 584 (1st Cir. 1970). In *Parke, Davis* it was

> . . . undisputed that New Hampshire has no interest in this litigation. The cause of action did not arise there, or as a result of anything which occurred there. *Parke, Davis*, 423 F.2d at 585.

Here New Hampshire has a substantial interest in the case. The accident occurred here, the cause of action arose here, important witnesses, and evidence may be located in New Hampshire, and the substantive law of New Hampshire will control the liability issues.

2. Since this is a diversity case, this court is subject to the same restraints as are the New Hampshire State Courts. Sanders Associates v. Galion Iron Works & Mfg. Co., 304 F.2d 915, 918 (1st Cir. 1962).

3. Designers and manufacturers of the airplane's integral parts were also held subject to the jurisdiction of the court.

4. Defendant's statement theoretically leaves one state in which diggers were not sold. However, there was no representation that that state is New Hampshire.

2. *The Question of Statutory Authority.* Having decided that Hughes Tool *can* be subjected to the jurisdiction of New Hampshire courts consistently with the due process clause of the Fourteenth Amendment, I must determine whether New Hampshire's statutory scheme of jurisdiction provides a basis upon which this plaintiff *may* maintain the present action. Put more succinctly, do New Hampshire courts have the statutory authority to decide this case? Defendant contends that plaintiff may not rely on NH RSA 300:14 either as it existed in 1969 or as amended in 1971. The inapplicability of the earlier version is based on the fact that plaintiff is not now a New Hampshire resident, and defendant maintains that it would be improper to apply the amended version of the statute retroactively. This situation, defendant posits, leaves plaintiff to rely on the "doing-business" standard of NH RSA 300:11—a standard defendant has shown plaintiff cannot meet.

 Turning first to the question of the retroactive applicability of the amended version of NH RSA 300:14, I note that

> Analysis of the particular problems of retroactivity by legislative expansion of the bases of personal jurisdiction requires awareness of the historical distaste of retroactive legislation. Note, Retroactive Expansion of State Court Jurisdiction Over Persons, 63 Colum.L.Rev. 1105, 1107 (1963).

At the outset it should be noted that there are constitutional overtones in the retroactive application of a statute which expands *in personam* jurisdiction. They emanate, of course, from the due process clause of the Fourteenth Amendment. However, several lower federal courts and some state courts have permitted retroactive application, especially in circumstances where, as here, the cause of action arose before the enactment of the expanding statute. *See e. g.,* Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583 (2nd Cir. 1965); Hardy v. Rekab, Inc., 266 F.Supp. 508 (D. Md.1967); Smith v. Putnam, 250 F.

Supp. 1017 (D.Colo.1965); Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957); Simonson v. International Bank, 14 N.Y.2d 281, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1964). *But see* cases cited in Note, Retroactive Expansion of State Court Jurisdiction of Other Persons, 63 Colum.L.Rev. 1105, 1119 n. 127. Although the due process considerations which pertain to the retroactive application of a jurisdictional statute are not precisely the same considerations which must be taken into account in a challenge to the scope of a jurisdictional statute, the fundamental question of reliance is central to each. And in view of the fact that the question of reliance by Hughes Tool has already been considered, it is not necessary to reiterate that discussion in this context. I agree with the New York Court of Appeals in *Simonson, supra,* which stated:

> In short, with the possible exception of cases in which the acts serving as the predicate for jurisdiction under the new section [of the New York long arm statute] are shown to have been carried out in justifiable reliance on the prior law . . ., CPLR § 302 [the New York counterpart to NH RSA 300:14] has retroactive effect to the extent of embracing suits instituted after its effective date but based on previously accrued causes of action. *Simonson,* 251 N.Y.S.2d at 440, 200 N.E.2d at 432.

Moreover, the Supreme Court considered a very analogous problem in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The *McGee* facts are simple. In 1944 the California plaintiff bought an insurance policy from Empire Mutual Insurance Company. In 1948 International Life, a Texas corporation, bought out Empire Mutual and took over plaintiff's policy by agreement with him. In 1949 California passed a long arm statute, and in 1950 plaintiff won a judgment on the policy against International Life in California. The mail contact with plaintiff was the only contact defendant had had with California, but the Supreme Court

upheld California's jurisdiction. Although the case dealt mainly with the due process requirements of *International Shoe,*

> The Court's summary analysis of the [jurisdictional retroactivity] problem makes it clear that constitutional objections will not be sustained absent extreme circumstances. Note, Retroactive Expansion of State Court Jurisdiction Over Persons, 63 Colum.L.Rev. 1105, 1124 (1963).

Having determined that the retroactive application of an *in personam* jurisdictional statute is constitutional, I now look to New Hampshire law to see if NH RSA 300:14 empowers this court to entertain the present action. New Hampshire courts follow the general rule of construction that "legislation is presumed to be prospective and not retrospective." Keating v. Gilsum, 100 N.H. 84, 87, 119 A.2d 344, 346 (1956). However, Town of Gilford v. State Tax Commission, 108 N.H. 167, 229 A.2d 691 (1967), stands for the proposition that

> [g]enerally speaking it is more fruitful to examine the language of the statute in the light of its purposes and objectives. 108 N.H. at 168–169, 229 A.2d at 693.

More to the point is the case of Property Owners Association at Suisseval, Inc. v. Sholley, 111 N.H. 363, 284 A.2d 915 (1971). In that case several purchasers of development lots sued defendant Sholley for misrepresentation in the sale of lots and fraudulent mismanagement of a corporation which had managed the land before it was transferred to plaintiffs.

> Service in these cases was made subsequent to August 29, 1969, the date RSA 510:4 (supp.) became effective but the acts of the defendant complained of occurred before that date. 111 N.H. at 365, 284 A.2d at 916.

NH RSA 510:4 (supp.) is the long arm jurisdictional statute for nonresident individuals. It is quite similar to NH RSA 300:14. In deciding to apply the statute retroactively, the court noted:

> The presumption that a statute applies prospectively is reversed when its purpose is remedial. Pepin v. Beaulieu, 102 N.H. 84, 89, 151 A.2d 230, 235 (1959). Furthermore, since service here was made after the effective date of the statute, the argument that it is being applied retroactively is correct only if it changed the substantive rights of the parties in existence before its enactment. The statute here makes no change in substantive rights. If the defendant's dealings in New Hampshire land gave rise to a cause of action they did so at the time he acted. The increased reach of our jurisdiction provided by the statute means that he must answer for his acts here rather than another forum, but his rights remain the same whether he is answering for acts committed before or after the new statute.

> Our court hailed the extended jurisdiction permitted to the State by International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and announced our intention to exercise jurisdiction under our long arm statutes to the full extent of the constitutional limit. Roy v. North American Newspaper Alliance, 106 N. H. 92, 205 A.2d 844 (1964). Sholley, 111 N.H. at 365, 284 A.2d at 916.

Although the New Hampshire Supreme Court analyzed the retroactivity problem in terms of the substantive-procedural dichotomy, it did not "consider reliance on prior law—the most significant barrier to retroactivity." Note, Retroactive Expansion of State Court Jurisdiction Over Persons, 63 Colum.L. Rev. 1105, 1119 (1963). As discussed earlier, defendant could not have relied on immunity from suit in New Hampshire. In fact

> retroactive exercise of jurisdiction based on tortious injury in the state caused by an act or omission in or outside the state is unlikely to frus-

trate justified reliance. Note, Retroactive Expansion of State Court Jurisdiction in Other Persons, 63 Colum.L. Rev. 1105, 1127 (1963).[5]

In holding that the New Hampshire long arm statute may be applied retroactively, I note that "this represents the overwhelming weight of judicial authority." *Scholley, supra,* 111 N. H. at 366, 284 A.2d at 917. *See* Diamond Crystal Salt Co. v. P. J. Ritter Co., 419 F.2d 147 (1st Cir. 1969); Annot., 19 A.L.R.3rd 138 (1968); Hardy v. Rekab, *supra.*

Since plaintiff may proceed under NH RSA 300:14 as amended, there is no need to determine whether he could proceed under the 1965 version of the statute, on the ground that he was a New Hampshire resident at the time of the accident. Nevertheless, it is appropriate to point out that at the time he was injured, plaintiff could have sued Hughes Tool here. His move to Maine was a fortuitous event which did not remove him from the class of persons sought to be protected by NH RSA 300:14. Moreover, if the accident had occurred after the 1971 amendment, plaintiff could have sued Hughes Tool in New Hampshire, even if he had never been a New Hampshire resident.

The 1971 expansion of *in personam* jurisdiction is consistent with New Hampshire's policy of exercising its "jurisdiction to the full extent of the constitutional limit." Sanders Associates v. Galion Iron Works & Mfg. Co., 304 F.2d 915, 919 (1st Cir. 1962); Roy v. North American Newspaper Alliance, 106 N.H. 92, 95, 205 A.2d 844, 846 (1964). And it would not be in keeping with the spirit of this policy to deny plaintiff, a member of the class sought to be protected at the time of the accident, the right to sue under this statute.

For the foregoing reasons, defendant's motion to dismiss is denied.

So ordered.

5. This may not be true in cases involving nonphysical injury. See W. Reese and M.

Rosenberg, Conflict of Laws (1971) 138 n. 3.