LUCY W. SMYTH *v.* TWIN STATE IMPROVEMENT CORP.

(80 A2d 664)

February Term, 1951.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion Filed May 1, 1951.

*Bloomer & Bloomer* for the plaintiff.

*Charles J. Marro* for the defendant.

BLACKMER, J. This is an action of tort. The complaint sets forth these facts. The plaintiff, a resident of Rutland, this state, owned and occupied a house therein. The defendant, a builder and roofer by trade, endeavored to re-roof the house and put metal edgings on the sides thereof. While so doing it negligently placed holes in the roof and sides of the buildings which caused it to leak water, with specified damage to the plaintiff.

The defendant is a foreign corporation. Service on it was made by delivering a copy of the writ to the Secretary of State as process agent for the defendant under V. S. 47, § 1562; by forwarding a copy of the process, with the officer's return thereon showing such service, to the foreign corporation by registered mail at its principal place of business in Massachusetts, where it is incorporated, and by filing with the process an affidavit of compliance, both as required by V. S. 47, § 1563. The defendant appeared specially and moved to dismiss on the grounds (1) that the complaint did not show the commission of a tort in Vermont, as required by V. S. 47, § 1562; and (2) that V. S. 47, § 1562 is unconstitutional. After hearing the motion to dismiss was granted for want of allegation in the plaintiff's complaint of the requisite jurisdictional facts; the constitutional question was neither reached nor considered. The plaintiff carries her exceptions here.

■ The defendant seeks to support the ruling on the ground that the complaint does not allege the existence of a duty on the part of the defendant to the plaintiff. It is well established that before liability attaches for negligence such a duty must arise. *Coburn* v. *Swanton,* 94 Vt 168, 170, 109 A 854; *Terrill* v. *Spaulding,* 115 Vt 342, 346, 61 A2d 611; *Trudo* v. *Lazarus,* 116 Vt 221, 223, 73 A2d 306; *Agosta* v. *Granite City Real Est. Co., Inc.,* 116 Vt 526, 80 A2d 534 decided at this term.

■ The defendant thinks that if any duty existed it must have arisen under some contract. The complaint is silent as to any contract; for all that appears the defendant was a volunteer, gratuitously making repairs. But if it was, that is not fatal to the plaintiff's case. Even a volunteer or a stranger is liable for an injury negligently inflicted on the property of another; the law imposes an obligation upon everyone who attempts to do anything for another,

even gratuitously, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which duty an action lies. 38 Am Jur Negligence, § 17; 65 CJS Negligence, § 4b; Restatement of the Law of Torts, Vol. 2, § 323 (1) and Comment a thereto. The ground upon which the trial court placed its ruling is not sound.

The second claim of the defendant, viz., that V. S. 47, § 1562 is unconstitutional presents a question of much more consequence, and much greater difficulty. The argument is that the statute "abrogates the general rule" which is said to be that single or isolated acts will not ordinarily be regarded as such a doing or carrying on of business as to subject a foreign corporation to the jurisdiction of a state court via the medium of substituted service. It is not questioned that the method of notice employed by V. S. 47, § 1563 is reasonably calculated to give actual notice to the defendant of the pendency of the litigation; that subject is not a topic of discussion herein.

V. S. 47, § 1562, which is the focus of the defendant's attack reads as follows:

> "1562. Doing business, definition, service of process. If a foreign corporation makes a contract with a resident of Vermont to be performed in whole or in part by either party in Vermont, or if such foreign corporation commits a tort in whole or in part in Vermont against a resident of Vermont, such acts shall be deemed to be doing business in Vermont by such foreign corporation and shall be deemed equivalent to the appointment by such foreign corporation of the secretary of the state of Vermont and his successors to be its true and lawful attorney upon whom may be served all lawful process in any action or proceedings against such foreign corporation arising from or growing out of such contract or tort. The making of such contract or the committing of such tort shall be deemed to be the agreement of such foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served on the foreign corporation at its principal place of business in the state or county where it is incorporated and according to the law of that state or county."

In our examination we shall limit ourselves to the precise problem presented: Has the State of Vermont the power to subject by statute to the jurisdiction of its courts a foreign corporation which commits a single tort in whole within the territorial limits of Vermont and against a resident of Vermont to actions and proceedings against it arising from or growing out of such tort? Does such a statute violate the due process clause of the Fourteenth Amendment to the Constitution of the United States of America?

The treatment must begin with *International Shoe Co.* v. *State of Washington,* 326 US 310, 66 S Ct 154, 90 L ed 95. Prior to that case the power of a state to render a personal judgment against a foreign corporation was based on various concepts, the courts most often referring to "implied consent" by the corporation to the exercise of jurisdiction, or to the "presence" of the corporation wherever its activities are carried on. Under either fiction the extent of the activities of the foreign corporation within the state of the forum is of importance. The phrase "doing business", so often used by the courts, expresses a conclusion of fact and denotes the result of a policy judgment. 16 U. Chi. L. Rev. 523, 524.

These fictions were expressly discarded by the United States Supreme Court speaking through Chief Justice Stone, in *International Shoe Co.* v. *State of Washington, supra,* 316, 317. For them was substituted the test that the foreign corporation is required to have "certain minimum contacts with it (the forum) such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' ". *Idem,* 316. The demands of due process "may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." *Idem,* 317.

*International Shoe Co.* v. *State of Washington, supra,* notices, at 318, that "the commission of some single or occasional acts of the corporation agent in a state sufficient to impose an obligation or liability on the corporation has not been thought to confer upon the state authority to enforce it. *Rosenberg Bros. & Co.* v. *Curtis Brown Co.,* 260 US 516, 43 S Ct 170, 67 L Ed 372." The phraseology used hardly constitutes an enthusiastic endorsement of the case cited. Moreover the Rosenberg case appears to have involved contractual liability, whereas the instant case is concerned with tortious activity. The International Shoe case then goes on at 318

to point out that "other such acts, because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit" citing cases. We emphasize that the cases cited illustrate the proposition that continuous activity within the state is not necessary as a prerequisite to jurisdiction.

We are of the opinion that the United States Supreme Court has left undecided whether isolated tortious activity could result in a proper subjection of a foreign corporation to suit in the forum when the cause of action arose out of that activity; no generally applicable standards can be ascertained from the decisions beyond the statements in the International Shoe case, supra. Anno. 94 L ed 1181. The American Law Institute indicates that the issue is open as of 1948. Restatement of the Law of Judgments § 23 and caveat thereto; Restatement of the Law of Conflict of Laws, 1948 Supplement, § 88. The following additional language from the International Shoe case at 319, is quoted in support of this conclusion: "It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual. or corporate defendant with which the state has no contacts, ties, or relations. But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

The phrase "in most instances" may well have reference to situations where an undue hardship would be visited on the defendant corporation. We appreciate, in the words of Judge Learned Hand in *Kilpatrick* v. *Texas & P. Ry. Co.*, 166 F2d 788 (C. C. A2d 1948),

574

that "the court must balance the conflicting interests involved: i. e. whether the gain to the plaintiff in retaining the action where it was, outweighed the burden imposed on the defendant; or vice versa." In the present case no problem of undue hardship is involved, since it is relatively easy for a Massachusetts corporation to defend in a Vermont court. Instances where foreign corporations commit a single tort at a great distance from home are doubtless rare. Should a case of undue hardship be presented, the doctrine of forum non conveniens is an adequate instrumentality through which justice can be achieved. See *Kilpatrick* v. *Texas & P. Ry. Co., supra,* 791; *Blaustein* v. *Pan American Petroleum & Transport Co.,* 174 Misc 601, 21 NYS2d 651, 706; Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Col. L. Rev. 1. In this connection should be noticed also the statement of Mr. Justice Black in his concurring opinion in *International Shoe Co.* v. *State of Washington, supra,* 325: "Nor can I stretch the meaning of due process so far as to authorize this Court to deprive a state of the right to afford judicial protection to its citizens on the ground that it would be more 'convenient' for the corporation to be sued somewhere else."

In the International Shoe case, *supra,* 317, Chief Justice Stone made this statement: "An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection." All that has been said in the preceding paragraph is equally relevant in this regard without necessity of repetition.

What we are considering is the power of the State of Vermont. Anno. 94 L ed 1168. The only limitations upon the jurisdiction of the courts of one of the United States are to be found in the constitution of the state, the Constitution of the United States, and the same extensive powers possessed by the other states of the United States. No express limitation is known to us in any of these sources which prevents appropriate courts of a state from exercising jurisdiction over proceedings therein arising out of tortious acts done within the state, provided always that adequate notice of the litigation be given to the particular defendant against whom liability is sought to be enforced. There is no arbitrary exercise of the power, since the nonresident has had the protection of the state's laws while acting therein. See 34 California Law Review 331, 337. That we have jurisdiction of the tort claimed to have been committed in the instant case is clear on our own decisions. *Osborne & Woodbury*

v. *Shawmut Ins. Co.,* 51 Vt 278; *U. S. A. to Use of Straight* v. *U. S. Fid. & Guar. Co.,* 80 Vt 84, 89, 66 A 809. Of course, these cases do not determine whether Vermont can exercise that jurisdiction against this defendant. No sound reason appears to exist why foreign corporations may not be held responsible in Vermont for wrongful acts done in Vermont. If a foreign corporation voluntarily elects to act here, it should be answerable here and under our laws. The consequences imputed to it lie within its own control, since it need not act within this state at all, unless it so desires.

Extension of the jurisdiction of courts may be expected to continue in the wake of scientific and economic developments. Facility of travel has largely effaced state lines. Specific extensions, including the one under consideration, may generate considerable difference of opinion as to the reasonableness of assuming jurisdiction over a particular defendant or class of defendants. We recognize that there is a dual trend in jurisdictional decisions: in defining the court with jurisdiction, a trend from the court with immediate power over the defendant to the court where both parties may most conveniently settle their dispute; and in defining due process of law, a trend from emphasis on the territorial limitations of courts to emphasis on providing notice and opportunity to be heard. The implications of *International Shoe Co.* v. *State of Washington* are a part of this dual trend. Its broad standard we expect will prevail. Any change will be, most likely, a further extension. See 16 U. Chi. L. Rev. 525, 533, 536.

The rationalities of the situation presented appeal to our minds as supporting the holding which we make. Common ideas of justice require that a foreign corporation be subject to suit in the courts of a state where it does a tortious act, when the state so elects, and when the suit is based on such act. Where the cause of action arises out of the act done, the court of the locus is normally the forum of convenience for the settlement of the dispute. See *Hess* v. *Pawloski,* 274 US 352, 356, 47 S Ct 632, 71 L ed 1091, 1095. The probabilities are that the witnesses will be readily available; the law of the state where the act is done will control the consequences of the act. To require a resident to commence his action in a foreign jurisdiction on a tort committed where he lives, and to transport his witnesses to such other state might well make protection of his right prohibitive and in effect permit a foreign corporation to commit a tort away from its home with relative immunity from legal responsi-

bility.  See *Wein* v. *Crockett,* 1948, 113 Utah 301, 195 P2d 222. In many instances the cost of the remedy would have largely exceeded the value of its fruits.  Without such a statute as V. S. 47, § 1562 a defendant could say to his plaintiff that the issue between them over acts done at the plaintiff's home could be settled in only one of two ways, first by accepting the defendant's contention about it, or, second, by suing the defendant in his own bailiwick.  See *Storey* v. *United Ins. Co.,* 64 F Supp 896, 898.  The hardship is great when a citizen meets with jurisdictional objections when he seeks, in the courts of his state, to assert a claim arising out of a tortious act done by a foreign corporation within the state.  To our mind, "traditional notions of fair play and substantial justice" require that a nonresident corporate tort feasor be compelled to defend, in the courts of this state, a cause of action arising out of its tort committed here.  This concept does not violate the due process clause since it requires a legal basis for jurisdiction, that is to say, that the foreign corporation must have done a tortious act within the state. It makes no hostile discrimination against foreign corporations, but tends to put them on the same footing as domestic corporations. Literal and precise equality in respect of this matter is not attainable; it is not required.  See *Hess* v. *Pawloski, supra.*

The last word from the Court by which the ultimate decision must be made is found in *Travelers Health Association* v. *Commonwealth of Virginia,* 339 US 643, 70 S Ct 927, 94 L ed 1154 (June 5, 1950).  The case concerns sale of insurance.  The opinion does not decide the issue raised in this case.  At 648 the doctrine of the International Shoe case is quoted with approval.  It is said, at 649, that "Health benefit claims are seldom so large that Virginia policyholders could afford the expense and trouble of a Nebraska law suit.  In addition, suits on alleged losses can be more conveniently tried in Virginia where witnesses would most likely live and where claims for losses would presumably be investigated.  Such factors have been given great weight in applying the doctrine of forum non conveniens."  The Court thought, at 339 US 649, 70 S Ct at 930, that "Metaphysical concepts of 'implied consent' and 'presence' in a state should not be solidified into a constitutional barrier against Virginia's simple, direct and fair plan for service of process on the Secretary of the Commonwealth."  And, with especial significance here, Mr. Justice Douglass, concurring, stated it to be so, at 339 US 654, 70 S Ct at 933, that "Whether such solicitation is isolated or

continuous, it is activity which Virginia can regulate." The dissent in the Travelers case stressed that under the International Shoe case there must be "activities of the corporation's agent within the state." What troubled the dissenters is no problem here; it is clear that the corporate defendant in this case did act through an agent or agents within the territorial limits of Vermont.

It has been made apparent already in what has been written that the instant case can be decided either way on argument from existing authority. Such authorities are collected in 23 Am Jur Foreign Corporations, §§ 370 and 495; 20 CJS Corporations, §§ 1830 and 1920; 16 U. Chi. L. Rev. 523, 530-531; Anno. 94 L ed 1167; 39 Harv. L. Rev. 563, 579; *Johns* v. *Bay State Abrasive Products Co.,* 89 F Supp 654, 663. Exhaustive discussion is out of the question. The only cases controlling on us are ones of the United States Supreme Court. Those which might be cited against this opinion, not mentioned above, are: *Sasnett* v. *Iowa State Traveling Men's Ass'n.,* 302 US 711, 58 S Ct 30, 82 L ed 549 (affirming 90 F2d 514); *Doherty & Co.* v. *Goodman,* 294 US 623, 55 S Ct 553, 79 L ed 1097; *Cannon Mfg. Co.* v. *Cudahy Packing Co.,* 267 US 333, 45 S Ct 250, 69 L ed 634; *Bank of America* v. *Whitney Cent. Nat'l Bank,* 261 US 171, 43 S Ct 311, 67 L ed 594; *Hunter* v. *Mutual Reserve Life Ins. Co.,* 218 US 573, 31 S Ct 127, 54 L ed 1155; *Cooper Mfg. Co.* v. *Ferguson,* 113 US 727, 5 S Ct 739, 28 L ed 1137. All are readily distinguishable; none is controlling. What persuasive effect they have is small in comparison with the authority and reasoning relied upon. They all precede in time the International Shoe decision, which marked a change in the judicial climate.

V. S. 47, § 1562 is not in conflict with the Constitution of the United States of America in the particular in which it is challenged.

*Order granting defendant's motion to dismiss and judgment for defendant reversed and cause remanded.*