Harold J. GREEN, Appellant,

v.

BLUFF CREEK OIL COMPANY, Appellee.

No. 18151.

United States Court of Appeals Fifth Circuit.

Feb. 17, 1961.

Ewell P. Walther, Jr., Saul Stone, New Orleans, La., Stone, Pigman & Benjamin, New Orleans, La., for appellant.

Leon Shipp, Oklahoma City, Okl., J. W. Hassell, Jr., Dallas, Tex., Robinson, Shipp, Robertson & Barnes, Oklahoma City, Okl., for appellee.

Before TUTTLE, Chief Judge, and BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

We deal once again with this case. On its first appearance, Bluff Creek Oil Company v. Green, 5 Cir., 1958, 257 F. 2d 83, we affirmed the summary judgment as to two parties, Rucker, individually, and his dominated corporation, Wabash Oil Company. Because the moving papers made a genuine, not a paper, dispute about the third party—the dominated corporation, Bluff Creek Oil Company—we remanded the case for further proceedings. A further trial was held after which the District Court reached the legal conclusion that nothing in the record "would show that Bluff Creek was doing business * * * *" in Illinois, and on that entered judgment for Bluff Creek. Green appeals asserting essentially three things. First, the Trial Court ignored our mandate and undertook to try the case on the intrinsic Illinois mer-

its. Second, in any event, the facts actually found by the Trial Court compel reversal despite the contrary formal conclusions. And third, if the facts on contractual activity are insufficient there can be no doubt that the evidence (and the Trial Judge's informal findings) demonstrate conclusively that a tort was committed in Illinois which would supply an alternative basis for jurisdiction over the nonresident defendant Bluff Creek. We agree with the second and reverse.

A brief summary will suffice. Green, not the first nor probably the last to complain that he had been defrauded in an oil deal, filed a suit in the Illinois State Court against Rucker, individually, and Wabash and Bluff Creek. He claimed that Rucker for all three had made wilful misrepresentations exaggerating prospective recoveries and conversely minimizing his share of potential operating costs. Service of process was made in Oklahoma on the three defendants under the Illinois Practice Act.[1] Under this statute a party subjects himself to Illinois suit if he, personally or "through an agent" does "any of the acts hereinafter enumerated." The latter include "(a) the transaction of any business within" Illinois or "(b) the commission of a tortious act within" Illinois. We remanded the case for the limited purpose of determining whether Bluff Creek, through Rucker, "did anything in Chicago" with respect to the transaction forming the subject matter of the Illinois suit sufficient to satisfy the Illinois statute.

The Trial Court heard considerable evidence and on the former, as well as the new, record made informal oral findings. Green testified at length, as did Rucker

[1] Sections 17 and 16, Title 110, Smith-Hurd Illinois Annotated Statutes, as amended 1955. This is set forth in our former opinion, 257 F.2d 83, 85, note 1. To the cases previously cited should be added National Gas Appliance Corp. v. AB Electrolux, 7 Cir., 1959, 270 F.2d 472, 475. See also Gavenda Brothers, Inc. v. Elkins Limestone Co., Inc., W.

Va.1960, 116 S.E.2d 910; Smyth v. Twin State Improvement Corp., 1951, 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193; and Compania De Astral, S.A. v. Boston Metals Co., 1954, 205 Md. 237, 107 A.2d 357, 108 A.2d 372, 49 A.L.R. 2d 646, upholding similar statutes in Vermont, V.S.1947, § 1562, and Maryland, Md.Code 1951, art. 23, § 88(d).

who was examined, cross·examined, re-examined and re-cross examined innumerable times.

No purpose would be served in delineating that evidence in any detail. Rucker could only confirm what our original opinion reflected, that he was the mastermind of both Wabash and Bluff Creek, and that where he went there they were also. This, of course, did not answer the question which precipitated the remand: while Bluff Creek was there in Illinois, was it *doing* anything in regard to this transaction? On that, many of the facts were likewise without much contradiction. It is true that Bluff Creek did not sell or assign any oil or mineral interests to Green. Rucker or Wabash, or both, did that. But it was equally clear that on several occasions Rucker discussed in considerable detail just what role Bluff Creek, as the operator, was to play. Rucker's own testimony requires the conclusion that when he was talking in these terms, he was talking *as* Bluff Creek. And it does not matter that in so speaking he may have been speaking in his other personalities as well. One of the subjects discussed at length was the basis for Bluff Creek's operating charge, the maximum amount to be allocated against Green, and the steps which Rucker said would be taken to assure a ceiling on such charges.[2]

If this were a case in which the Trial Court had rejected this evidence, we could disregard such determination only if it failed to pass the clearly erroneous test of F.R.Civ.P. 52(a), 28 U. S.C.A. But we are not faced with that formidable undertaking since the Trial Court found—informally to be sure, but nonetheless found—substantially in Green's favor on these critical credibility choices. For example, the Judge found that "I am sure that representations were made to Mr. Green that ought not to have been made." He then makes it plain that some of the representations bore on the absolute community identity

2. "Q. Mr. Rucker, in January of 1951, as the manager of Bluff Creek Oil Company, for yourself and for Wabash Oil Company, you went to Chicago, Illinois, did you not? A. Yes, sir, I was in Chicago.

\* \* \* \* \*

"Q. In your discussion with Mr. Harold Green in Chicago you had a discussion about the operation of the wells, did you not? A. Oh, I don't recall; I presume so. I presume there were some questions asked about it.

"Q. And you told him how the operating costs of the wells were handled, did you not? A. I explained the best I could that Bluff Creek was the operator and they didn't make any money out of it, they hired the labor and kept the wells producing.

"Q. Then in that connection you were representing Bluff Creek? A. Bluff Creek had a contract. They were operating a lot of wells then, for several companies and several individuals that were interested.

\* \* \* \*

"Q. In these discussions with Mr. Harold Green you explained to him that Bluff Creek was the operating company, did you not? A. I presume I did. If he asked me I presume I explained anything he might ask me.

"Q. And at that time you were general manager of Bluff Creek? A. Yes, sir, I was looking after all of the field operations.

"Q. Of Bluff Creek? A. Yes, sir.

"Q. So, any oil interests sold by yourself or Wabash in which Bluff Creek was interested, you were also speaking for Bluff Creek, is that correct? A. Bluff Creek was the operator of all of the property.

\* \* \* \* \*

"Q. I say, at the time you made these representations in this conversation to Mr. Green and to Mr. Schwartz about the operation of the wells by the operating company, which was Bluff Creek, you made those statements as the general manager of Bluff Creek, did you not? A. Well, I was general manager of Bluff Creek, yes, sir.

\* \* \* \* \*

"Q. Now, Mr. Rucker, I believe you said on direct examination that you did nothing for Bluff Creek in Chicago, Illinois during this period in 1951, is that correct? A. No, sir, I transacted no business whatsoever; I never talked to Mr. Green about Bluff Creek except maybe the operation of the wells is probably all."

existing among Rucker, individually, Wabash and Bluff Creek. "For instance, he [Green] was led to believe that all three parties, Mr. Rucker, in the middle, and 'Mr. Wabash' being on the left and 'Mr. Bluff Creek' on the right. They constituted something of a trinity, and that the act of one was the act by the other, or they were the alter-ego, one of the other, and that whatever one of them said was binding on all." Specially he credited Green's testimony that Rucker had in effect assured Green that all three were involved and liable for the contacts and dealings of one or the other or all three.[3]

The only finding which is at all helpful to Bluff Creek is the conclusion expressed at the end of this informal discourse. "I don't think anything that he [Rucker] did or anything that is shown in the record would show that Bluff Creek was up there doing business except maybe doing it in the name of Wabash or under Rucker's name."

 But this does not raise the barricade of F.R.Civ.P. 52(a). If it is anything it is a legal conclusion on the facts previously summarized (from which we have quoted above). As to legal conclusions we are not restrained by F.R.Civ.P. 52(a). More than that, the so-called conclusion on its face shows that the Judge did not mean to repudiate what he had just found in greater detail. For the clause "except maybe doing it in the name of Wabash or under Rucker's name" is perfectly consistent with his earlier finding that the three "constituted something of a trinity, * * * that the act of one was the act by the other, * * * and that whatever one of them said was binding on all."

The Judge was not misled by the facts nor his fact findings on the only matters pertinent to the remand. His

error was in testing the Illinois actions of the three (through Rucker) as though the intrinsic merits of the Illinois suit were then being tried. But these matters were, of course, foreclosed by the Illinois judgment once it was determined, as the Judge did, that Bluff Creek had to this extent transacted business in Illinois.

Thus, as it should to all cases, an end comes to this one. The parties have been heard, the testimony is all in, the Judge has made crucial findings requiring reversal. Nothing further needs to be done save to reverse and direct the entry of a judgment in favor of Green against Bluff Creek. 28 U.S.C.A. § 2106.

Reversed and rendered.

3. The Judge found: "When Mr. Green testified that Mr. Rucker said to him, 'The Wabash Company signed your papers, I signed them; we are liable, and here is the Bluff Creek Company and it is mine, and if I, as a representative of the Bluff Creek Company, and as myself, and representative of the Wabash Company, I assure you from all of them that you are protected,' I feel no doubt but what Mr. Green had some feeling of reassurance from that declaration."