233 So.2d 310 (1970)
Carl W. JONES, Plaintiff-Appellant,
v.
Jackson B. DAVIS et al., Defendants-Appellees.
No. 11381.
Court of Appeal of Louisiana, Second Circuit.
March 3, 1970.
Rehearing Denied March 31, 1970.
Writ Refused May 25, 1970.
*312 Bodenheimer, Jones, Klotz & Simmons, by G. M. Bodenheimer, Jr., Shreveport, for appellant.
Wilkinson, Woods, Carmody, Meadows & Hall, by W. Scott Wilkinson, Shreveport, for appellees.
Before AYRES, PRICE and WILLIAMS, JJ.
AYRES, Judge.
This is an action in tort wherein plaintiff seeks to recover of the defendants damages for an alleged libelous and slanderous assault upon plaintiff's personal character and reputation for honesty and integrity.
The basis of this action is a civil suit instituted by four non-residents of the State of Louisiana in the United States District Court for the Western District of Louisiana, Shreveport Division, in which plaintiff herein, Carl W. Jones, with others, was named a defendant. In the complaints filed in that action Jones was accused of certain specified unethical and criminal acts. These charges he alleges were false, unwarranted and malicious and made without probable cause or reason.
Defendants are Walston A. Lynn, J. T. Jordan, Houston B. Odom and Maxey C. Lynn, residents of the State of South Carolina, and Jackson B. Davis and Robert J. Moffatt, attorneys at law, residents of Shreveport, Caddo Parish, Louisiana.
In the federal suit the four non-resident defendants, appearing as plaintiffs therein, represented by the aforesaid attorneys, sought a judgment against Carl W. Jones, plaintiff herein, and two others, to set aside and rescind acts of sale and assignments of a certain oil and gas lease in DeSoto Parish, Louisiana, and to recover the price paid therefor in the sum of $33,530.
It was alleged in the aforesaid action that the sale of fractional interests in the lease was in violation of the United States Securities and Exchange Act [15 U.S.C.A. § 77a et seq. and § 78a et seq.], and that fraud was perpetrated upon complainants therein through means of certain false representations by one of Jones's co-defendants concerning mineral production from the lease and the value thereof. It was alleged that Jones executed the acts of sale, or assignments, and profited by the transaction, and that Jones, accordingly, knew, or should have known, of the fraudulent practice by his co-defendant Marvin L. Allison.
In the present action is is alleged that defendant attorneys were well-acquainted with plaintiff and knew his reputation for integrity in business and other affairs in the community in which he then lived and where he continues to reside, and that the other defendants could have, by simple investigation, ascertained his reputation, but they either failed to investigate or relied upon information furnished by their attorneys.
Further allegations are to the effect that defendants, conspiring together, falsely, maliciously and without probable cause, caused to be published in the aforesaid action in the Federal Court, defamatory statements charging plaintiff with fraud in these particulars:
First, "that defendant, Carl W. Jones, knew, or should have known, that defendants *313 J. W. Carraway and Marvin L. Allison performed acts of commission in the giving of false information to complainants, or committed acts of omission in failing to divulge the true facts involved to complainants"; second, "that each defendant herein named had an integral part in either the inception or negotiations and/or culmination of this illegal sale"; third, "that the securities issued to complainants by Carl W. Jones, certified copies of which are attached hereto and made a part hereof, were calculated to defraud complainants herein"; fourth, "that Carl W. Jones, defendant herein, made repeated use of the U. S. mails in the consummation of the illegal and fraudulent sales of securities in interstate commerce herein complained of by complainants"; fifth, "that each defendant herein named had an integral part in either the inception and/or negotiations and/or culmination of this illegal and fraudulent sale, as hereinafter set forth"; and sixth, "in a pre-trial stipulation filed in the record in the federal suit complainants therein, defendants herein, declared: `The purported sale was fraudulent; further, the sale was illegal under the provisions contained in 15 U.S.C.A. § 77a et seq., and 15 U.S.C.A. § 78a et seq., and that each defendant profited from the sale and fraud.'"
The aforesaid statements were alleged to have been made and uttered by all present defendants acting in concert with full knowledge and approval of each with malice and without probable cause.
Then, it is alleged that after trial there was judgment in the federal action rejecting complainants' demands against Carl W. Jones, plaintiff herein, in connection with which it is quoted from the judge's opinion that:
"It is clear from the record that Jones neither made nor participated in the making of any untrue statement or omission in the transaction; and that "Although the same theories of recovery were stated against all defendants, it was not seriously contended or shown to the court that Jones was guilty of any misrepresentations. It is our further conclusion that inasmuch as neither Jones nor Carraway made any misrepresentation under the Securities Act a fortiori, neither committed any fraud under the general law of fraud in Louisiana."
Defendant attorneys first filed an exception of no cause or right of action which was interpreted as a motion to produce certain of the pleadings in the Federal Court. The ruling of the Court having been complied with, the motion served its purpose and requires no further comment.
The defendant attorneys moreover filed a motion for summary judgment, to which they attached affidavits setting forth the facts on which they based their good faith that fraud had been practiced on their South Carolina clients, and that the purchase of the mineral interest from Jones was made on the basis of misrepresentations that had been made by Allison who they thought was an agent for Jones, and that the averments in their petition were based upon a careful investigation of the facts in an effort to properly represent the interest of their clients. They further state in their affidavits there was no malice or design on their part to injure Jones, nor was there any conspiracy by the attorneys and their clients for the purpose of defaming the character of plaintiff in this suit.
In opposition to the motion for summary judgment affidavits by plaintiff Jones and one Roger Wiley were filed. Included in the affidavit of Wiley is the statement that he heard defendant Moffatt, in the presence of defendant Davis, specifically state to plaintiff Jones that he, Moffatt, knew Jones had nothing to do with the activities leading to the lawsuit; and that he further heard Moffatt state to Jones that even if a judgment were secured against Jones in the Federal Court action, that no effort would be made to enforce it against Jones.
*314 Included in the affidavit by Jones is a statement that both Davis and Moffatt, in person and by telephone conversation, specifically advised Jones that they knew Jones had nothing to do with any fraud or fraudulent actions or transactions. The affidavit also includes a statement to the effect that despite such an assurance, and with malicious intent of damaging Jones, Davis and the other defendants filed the suit in the federal court charging Jones with fraud, fraudulent activities and dealings. The affidavit then recites that in affiant's opinion the only reason for including him in the suit was the knowledge of the defendants that the other defendants named by them in the Federal Court proceeding were impecunious and unable to respond to a judgment against them.
In reply to these affidavits filed in opposition to the motion for summary judgment, defendants Moffatt and Davis filed supplemental affidavits denying the statements made by Jones and Wiley in their affidavits.
The non-resident defendants filed a plea to the jurisdiction and an alternative plea of unconstitutionality of the Louisiana "Long Arm Statute", LSA-R.S. 13:3201, as well as an exception of no cause or right of action. The plea to the jurisdiction and the alternative plea to the unconstitutionality of the statute were overruled. The exception of no cause or right of action was sustained, as was the motion for a summary judgment urged by defendants Davis and Moffatt. From a judgment thus dismissing plaintiff's action, plaintiff appealed.
Plaintiff, on appealing, specifies in an assignment of errors that the court erred, first, in concluding from the affidavits filed there was no genuine issue of fact on the question of malice on the part of the defendants Davis and Moffatt and, therefore, erred in sustaining their motion for summary judgment and, second, in concluding, under the provisions of LSA-R.S. 13:3415, no party to an action or proceeding is liable for any slanderous or libelous words uttered by their attorney at law. The non-resident defendants answered plaintiff's appeal and prayed, in the alternative, their plea to the jurisdiction and plea of unconstitutionality be sustained.
First, logically for consideration are the merits of the motion for a summary judgment. We are not at this time concerned with the facts or what ultimately may be established to be the facts of this case. Consideration of the issues appertaining to the merits of this case must be reserved or deferred until or whenever this action is tried upon its merits. Our only concern is whether there exists a genuine issue as to a material fact, for it is only in the absence of such an issue that a motion for a summary judgment may be sustained. C.C.P. Art. 966. The provisions of the aforesaid article of the Code of Civil Procedure relating to judgments were taken, with only slight variations, from Rule 56 of the Federal Rules of Procedure. Consequently, the jurisprudence of the federal appellate courts pertaining to the application of this rule may be given consideration in cases in which the article of our Code of Civil Procedure is at issue.
Upon this subject the Supreme Court in Kay v. Carter, 243 La. 1095, 150 So.2d 27, 29-30 (1963), made these observations:
"Those courts have laid down certain basic principles to be followed in connection with the use of Rule 56 to obtain summary judgments. As stated in Volume 6 of Moore's Federal Practice, Second Edition (numerous federal decisions are therein cited and discussed), in passing upon a motion for a summary judgment the purpose of permitting the court's examination of proffered materials extraneous to the pleadings is not that `of trying an issue but to determine whether there is a genuine issue of material fact to be tried' (page 2030); the burden is on the mover to show that there is no genuine issue of fact (pages 2111, 2123 et seq.); and any doubt must *315 be resolved against the granting of a summary judgment (pages 2114-2119). Incidentally, to a similar effect (and citing numerous federal decisions) is an annotation under Article 966 in West's Louisiana Code of Civil Procedure, it reading: `One who moves for summary judgment has burden of demonstrating clearly the absence of any genuine issue of fact and any doubt as to existence of such an issue is resolved against the movant. * * *'
"Again, in a summation of the holdings in the mentioned jurisprudence the same authority (Moore's Federal Practice), on pages 2120 and 2121, makes the following pertinent observations: `The above principles and decisions, most of which reversed the trial courts' grant of summary judgment, indicate that the trial courts had too freely granted summary judgment and allowed the procedure as an improper substitute for a live trial. * * *'
"`While trial judges may feel that the appellate courts have unduly limited summary judgment and have often applied the Rule unrealistically, and some trial courts are still too prone to grant summary judgment, there is considerable evidence that the early and unsound trend in the trial courts has been checked and that district judges now recognize that summary judgments are to be cautiously granted. If there is to be error at the trial level it should be in denying summary judgment and in favor of a full live trial. * * *'"
As was pointed out in Smith v. Preferred Risk Mutual Insurance Company, 185 So.2d 857, 860 (La.App. 3 Cir. 1966):

"However, to obtain a summary judgment it is not sufficient to prove that it is unlikely that the plaintiff may recover or that the preponderance of the showing then made indicates there is no liability; for the function of the court is not to determine the merits of the issues involved, but only whether or not there is a genuine and material factual issue. Vallier v. Aetna Finance Co., La.App. 3 Cir., 152 So.2d 112. As stated in Brown v. B. & G. Crane Service, Inc., La.App. 4 Cir., 172 So.2d 708, 710, `* * * A genuine issue is a triable issue and the interest of justice, at the risk of some delay and possible expense, is best served by resolving all doubt against the granting of the motion for summary judgment. It is not enough that the court has grave doubt that the party alleging a cause can sustain his contention to deny him his day in court.'" (Emphasis supplied.)
See also Greene v. Travelers Insurance Company, 212 So.2d 737 (La.App. 3 Cir. 1968), and
McLain v. Zurich Insurance Company, 220 So.2d 148, 150 (La.App. 3 Cir.1969).
In the latter case is this comment:
"Jurisprudence interpreting this statute has established certain basic principles. In ruling on a motion for summary judgment, the function of the court is not to determine the merits of the issues involved or whether it is likely or unlikely that plaintiff may recover. The only question is whether there is a genuine issue of material fact. The burden is on the mover to show there is no such issue. Any doubt must be resolved against the granting of a summary judgment. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Greene v. Travelers Insurance Company, 212 So.2d 737 (La.App. 3rd Cir.1968)." (Emphasis supplied.)
Defamatory and libelous statements made in a judicial proceeding reflecting on one's honesty and good character when made maliciously and without probable cause are actionable. Lescale v. Joseph Schwartz Company, Ltd., 116 La. 293, 40 So. 708; Sabine Tram Company v. Jurgens, *316 143 La. 1092, 79 So. 872; Robinson Mercantile Company v. Freeman, La.App., 172 So. 797, 799; Waldo v. Morrison, 220 La. 1006, 58 So.2d 210, 32 A.L.R.2d 419.
The gist or substance of defendants' affidavits in support of their motion relate generally to their want of malice. The affidavits in opposition tend to establish malice on defendants' part. The issues with respect to the defamatory and libelous character of the statements made in the pleadings in the federal action and as to whether they were made maliciously and without probable cause have not been reduced, or eliminated, by the filing of these affidavits.
A motion for a summary judgment may not be sustained on a basis that the affidavits on one side preponderate over the facts related in the opposing affidavits. Thus, despite these contradictory affidavits an issue of material fact remains. These issues must be resolved by a preponderance of evidence after trial.
Hence, we conclude a genuine issue as to a material fact exists and that the motion for a summary judgment was erroneously sustained.
The exception of no cause of action urged by the four non-resident defendants is based primarily upon the language of LSA-R.S. 13:3415, which recites: "No party to an action or proceeding is liable for any slanderous or libellous words uttered by his attorney at law." This section of the statute replaces that portion of Article 486 of the Code of Practice not transferred to or carried over into Article 371 of the Code of Civil Procedure. These articles obviously relate to an attorney's deportment before the court. We have not been furnished with citations construing this particular language of the statute, nor interpreting the language of the former article of the Code of Practice. Our own interpretation is that the section of the statute does not have reference to language contained in a pleading filed for or on behalf of a litigant. The fact is that since the enactment of the provisions in Article 486 of the Code of Practice, the jurisprudence of this State is replete with decisions where clients have been held responsible for defamatory and libelous statements by their attorneys in pleadings or other court proceedings. One of these cases is Oakes v. Alexander, 135 So.2d 513 (La.App. 2 Cir.1961certiorari denied).
There it was held that allegedly false judicial allegations were neither excused nor condoned on the ground of privilege since the common law rule of privilege does not prevail in this State; and that the record in an action for damages for false judicial allegations did not support the contention that defendants' counsel alone had been responsible for the allegations, and that defendants themselves had no connection therewith.
Elucidating upon the aforesaid conclusion, this court, through the late Judge Hardy as the author of the opinion, made the following comment, in Oakes v. Alexander, supra:
"We think the issue of privilege may be readily disposed. We find no authority for the recognition and enforcement of the common-law rule of privilege with respect to defamation resulting from libel or slander. An action for the redress of a grievance of this nature is predicated upon Article 2315 of our LSA-Civil Code and our jurisprudence is conclusive on the point that false judicial allegations can neither be excused nor condoned on the ground of privilege. We refer particularly to the case of Wimbish v. Hamilton, 47 La.Ann. 246, 16 So. 856, in which the court observed that no occasion nor probable cause existed for the defamation of plaintiffs' character nor for the use of the language set forth in the petition. As to the defense on the ground of the truth of these representations, the court further noted that there were no facts comprehended in the record which justified this assertion, and that the alleged basis *317 of belief, resulting from information, imposed upon defendant the assumption of the responsibility of establishing the truth of the accusations made.
"Similarly, in Lescale v. Joseph Schwartz Co., 116 La. 293, 40 So. 708, 714, the court, on original and rehearing, elaborately discussed the distinction between the application of the common-law rule of privilege and the civil law codal denial, in essence, of such a right. The ratio decidendi of the court's conclusion was briefly, but convincingly, stated as follows:
`The immunity (privilege as to judicial allegations) contended for may * * be abused. Its advocates seem to assume that the occasions when it could be abused would be of rare occurrence; but the fact is that every suit affords ample room for its abuse. It might be abused in a suit on a promissory note, or on a plain loan of money. It might be made a terrible instrument in the hands of blackmailers.
`Because a certain rule has prevailed in England, and has been followed more or less extensively in those states whose jurisdiction is a mere continuation of that of England, is no reason why a court, administering the civil law, and acting under a statute, should sanction a thing working such great hardship in individual cases, without any appreciable good to the public.' (Emphasis supplied.)
"In brief before this court counsel for appellants urgently insist that the responsibility for the admittedly defamatory allegations in the Federal Court suit should be entirely charged against the original counsel for these defendants and make the observation:
`There is not the slightest hint in the record that the clients themselves ever had any connection whatever with those (defamatory) allegations.'
"We think this contention is fully answered by the observation that the record contains an affidavit signed by these defendants which recites that they had read the first amended complaint filed in the Federal Court suit, which contained numerous defamatory statements as to these plaintiffs; that they knew the contents thereof and that the same were true of their own knowledge or upon their information or belief.
"In this connection, it is further pertinent to note that the only one of defendants who appeared as a witness upon trial of these cases, namely, Masso Washington, did not testify that he was unfamiliar with the statements made nor that his counsel was either entirely or even partially responsible therefor. The three remaining defendants neither appeared in person nor by deposition. If the proposition so vigorously contended by counsel for defendants was susceptible of proof by any of these defendants, such proof should have been offered, and the obvious self-interest of defendants indicates that if it had been available it would have been produced. Our examination of the record fails to disclose any reasonable basis which would sustain the argument advanced.
"Finally on this issue, in deference to counsel's zealous development thereof, we have considered the authorities cited in brief and find it necessary to comment only with respect to counsel's observation that the Supreme Court of Louisiana had noted `* * * "the common-law rule of absolute privilege" which has been adopted by the Federal Court.', in Waldo v. Morrison, et al., 220 La. 1006, 58 So.2d 210, 211, 32 A.L.R.2d 419. While the above-quoted statement is entirely true, we find it completely without any persuasion, much less conviction, with reference to the instant case. The opinion in the cited case reiterated the principle that the common-law rule of absolute privilege has no place in *318 the law of Louisiana. Continuing with the observation that the privilege is qualified, the court observed that it
`* * * is subject to the rule that the comment made must be material, with probable cause and without malice.' (Emphasis supplied.)
"The opinion quoted from the case of Sabine Tram Co. v. Jurgens, 143 La. 1092, 79 So. 872 wherein the court permitted recovery because of lack of probable cause:
`The charges of fraud were essentially injurious to appellant, and, having been found to be untrue, were libelous.'" (Emphasis supplied.)
This leaves for consideration the questions relating to the plea to the jurisdiction and the alternative plea of the unconstitutionality of the Louisiana "Long Arm" statute. These pleas are interrelated inasmuch as the matter of jurisdiction is dependent upon the statute, LSA-R.S. 13:3201 which, in part and so far as pertinent, provides:
"A court may exercise personal jurisdiction over a non resident who acts directly or by an agent, as to a cause of action arising from the non resident's * * *
"(c) causing injury or damage by an offense or quasi offense committed through an act or omission in this state."
The alleged libelous statements were made and published in this state and within the territorial jurisdiction of The First Judicial District Court for Caddo Parish, Louisiana. Whatever injury or damage was sustained was done in Caddo Parish. Though the "Long Arm" statute, with respect to the commission of a tortious act in this state by a non-resident, has apparently not been the subject for a judicial determination, this particular provision of the statute rests on the assumption that the commission of an offense, or quasi offense, by act or omission within the state is a sufficient basis to enable the courts of this state to acquire jurisdiction in personam over a non-resident on causes of action arising from a single act done or committed within the state.
The extent of the state's jurisdiction by virtue of this statute is a constitutional question dependent upon due process. Thus, the determination of the rights and obligations of parties by courts without jurisdiction is not due process of law.
A physical power concept as a basis for jurisdiction at common law was maintained in the landmark case of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878). This concept was followed with respect to single acts of non-residents in matters involving the operation of motor vehicles, Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L. Ed. 1091 (1927), or the sale of stock, Henry L. Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097 (1935). The general rule thus developed was that jurisdiction must be based on the physical power of the court over defendant which, in turn, necessitated service of process within the state, Pennoyer v. Neff, supra. The theory that a non-resident motorist consented to service on a designated resident as an agent for service was a basis for the Non-Resident Motorist Acts. However, this view has shifted from consent to service of process to the nature of the non-residents' activities within the state. Thus, in International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945), the court reexamined the entire question of due process requirements for in personam jurisdiction over non-residents and came up with the rule that due process "requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice'."
In McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, *319 2 L.Ed.2d 223 (1957), the court reasoned that severe economic disadvantages of forcing a claimant, especially one with a small claim, to pursue an insurer to its home state would deprive the claimant of a legal remedy, particularly where important witnesses were in the claimant's area. The reasoning in this case lends great support to statutes which grant courts jurisdiction over non-residents on the basis of a tort committed within the state.
Under the rule announced in the McGee case, it seems clear that the commission of a tort through an act or omission in the state would be a sufficient minimum contact to provide a basis for personal jurisdiction over a non-resident tort-feasor. Although this question has not, to our knowledge, been determined by the United States Supreme Court, it has been adjudicated by other courts. Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193 (1951); Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957).
In the first of these cases a foreign corporation negligently damaged plaintiff's home in an attempt to re-roof it. The Vermont Supreme Court held the validity of service of process on the Secretary of State under a Vermont statute which provided that if a foreign corporation commits a tort in whole or in part in the state, it shall be deemed to be doing business in Vermont and to have appointed the Secretary of State agent for service of process in actions arising out of the tort. The court held that it did not violate due process to require a defendant who had committed a tort within the state to submit to jurisdiction of the courts of that state on a cause of action arising from that tort.
A similar result was reached in the latter, an Illinois case, which arose after the McGee case and under an Illinois statute which provided that the commission of a tortious act within the state subjects the tort-feasor to the jurisdiction of the Illinois courts on a cause of action arising from the tortious act. The defendant, a Wisconsin resident, sent his employees into Illinois to deliver a stove. Plaintiff was negligently injured by the employees while assisting in unloading the stove. The court concluded that the jurisdictional requirements were met when the defendant is the author of acts or omissions within the state and the complainant alleged a cause of action in tort arising from that conduct. That the defendants had enjoyed the protection of Illinois law; that most of the important witnesses were in Illinois and that Illinois' substantive law govern, were given considerable weight.
The reasoning in the Smyth, Nelson and McGee cases was similar. The court, however, emphasized that jurisdiction was based on the legitimate interest of the state in providing redress against those who have substantial contacts with the state and incur obligations to its residents. Under the statute now being considered, this state may be said to have the same legitimate and basic interest. See 26 La.L.Rev. 389 "Jurisdiction in Personam over the Non-Resident Tort Feasor".
In view of the rulings in authorities cited, the provisions of the Louisiana statute granting the courts jurisdiction over a non-resident on a cause of action based on the commission of an offense, or quasi offense, through an act or omission in Louisiana, is a valid exercise of power and does not violate the requirements of due process.
It may be noted that the validity or constitutionality of a statute is presumed unless and until the contrary is clearly established. That has not been accomplished in this case.
The cause of action asserted herein arose from the alleged tortious acts of the defendants.
We conclude that the so-called "Long Arm" statute of the State of Louisiana is valid and constitutional and that, accordingly, the plea to its unconstitutionality, as *320 well as the plea to the jurisdiction, were correctly overruled, and that the exception of no cause of action should likewise have been overruled.
For the reasons herein assigned the judgment appealed is annulled, avoided, reversed and set aside, and
It is now ordered, adjudged and decreed that the motion for a summary judgment filed on behalf of defendants, Jackson B. Davis and Robert J. Moffatt, and the exception of no cause of action filed on behalf of the non-resident defendants be and they are hereby overruled and, accordingly, this cause is remanded to The Honorable The First Judicial District Court for Caddo Parish, Louisiana, for further proceedings consistent with the views herein expressed and according to law.
The cost of this appeal is taxed against the defendants; the taxation of all other costs are to await final disposition of this cause.
Reversed and remanded.