293 So.2d 228 (1974)
W. C. GREER and John W. Greer, Plaintiffs-Appellants,
v.
GENERAL MOTORS CORPORATION et al., Defendants-Appellees.
No. 4448.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1974.
*229 John P. Godfrey, Many, for plaintiff-appellant.
Lunn, Irion, Switzer, Johnson & Salley, by Richard H. Switzer, Blanchard, Walker, O'Quin & Roberts, by Neilson S. Jacobs, Shreveport, James L. Davis, Many, Sam J. Friedman, Natchitoches, Cook, Clark, Egan, Yancey & King, Benjamin C. King, Shreveport, for defendants-appellees.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
W. C. Greer and his son, John W. Greer, instituted this suit for damages allegedly sustained by them as a result of an accident which occurred while John W. Greer was driving a pickup truck owned by his father. The defendants are: (1) Lowrey Chevrolet, Inc., of Many, Louisiana, and its insurer, Travelers Indemnity Company; (2) Bill Lowrey Chevrolet, Inc., of Natchitoches, Louisiana; (3) General Motors Corporation and its insurer, Royal Indemnity Company. By third party petitions, Wiley T. Davis and Employers Commercial Union Insurance Company were made third party defendants.
Lowrey Chevrolet and its insurer, Travelers, filed a motion for a summary judgment, praying that the suit be dismissed as to them. After a hearing, the trial court rendered a summary judgment dismissing the suit as to those defendants, and plaintiffs appealed from that judgment. The case is before us on that appeal.
The sole issue presented is whether, under the undisputed facts, Lowrey Chevrolet was guilty of actionable negligence in failing to notify Bill Lowrey Chevrolet, Inc., of the fact that a part on the pickup truck was defective, and that that particular vehicle was the subject of a recall campaign.
The pertinent facts are not in dispute. The accident occurred at about 9:00 P. M. on June 6, 1970, while John W. Greer was driving his father's Chevrolet pickup truck on a state highway in Natchitoches Parish. The truck was traveling at a speed of about 60 miles per hour as it approached a curve in the highway. The driver decelerated as he negotiated the curve, and he began accelerating again as he came out of it. When the speed of the vehicle increased to about 60 miles per hour, Greer took his foot off the accelerator but the truck nevertheless continued to accelerate, and the driver thereupon lost control of it. The vehicle ran off the road, striking several trees and causing young Greer to sustain severe injuries.
The 1969 Chevrolet pickup truck involved in the accident had been manufactured by General Motors Corporation. General Motors sold the truck to Lowrey Chevrolet on February 16, 1969. Lowrey Chevrolet sold or transferred it to Bill Lowrey Chevrolet, Inc. (sometimes referred *230 to as "Bill Lowrey"), on March 12, 1969. Bill Lowrey sold the truck to Wiley T. Davis on March 13, 1969, and Davis sold it to plaintiff, W. C. Greer, on November 24, 1969.
The pickup truck was equipped with a four barrel Quadra-jet carburetor and a device called a "fast idle cam." Plaintiffs allege that the fast idle cam was defective, that they were unaware of that defect, that the defective part broke immediately prior to the time the accident occurred, and that the breaking or failure of that defective cam caused the accident. They allege that Lowrey Chevrolet was negligent in two respects: (1) In having failed to notify General Motors of the transfer of the vehicle to Bill Lowrey; and (2) in having failed to notify Bill Lowrey that the particular vehicle involved in the accident was subject to a recall campaign involving the fast idle cam. On this appeal plaintiffs argue only the second allegation of negligence, that is, that Lowrey Chevrolet was negligent in having failed to notify Bill Lowrey that this particular pickup truck was subject to the recall campaign.
On February 25, 1969, Chevrolet Motor Division of General Motors sent a telegram to all of its dealers, including Lowrey Chevrolet and Bill Lowrey, informing them that a group of 1968 and 1969 Chevrolet vehicles would require replacement of the "fast idle cam" on vehicles equipped with Quadra-jet carburetors, and explaining that after the carburetor had been operated for an extended period the fast idle cam might break apart, and that if that occurred it could fall into the throttle linkage and cause the carburetor throttle to stick in a partially open position. It was announced in that telegram that General Motors would begin notifying 4.9 million owners of G. M. cars and trucks to return them to G. M. dealers for corrective action. The telegram also stated "Since the same cams were used on 1969 models, owners of ... 1969 cars with quadra-jet carburetors will be asked to return them so the cam can be replaced."
On March 3, 1969, the Chevrolet Motor Division issued a "Campaign Bulletin" to all Chevrolet dealers, including Lowrey Chevrolet and Bill Lowrey, stating that "all 1969 Chevrolet passenger cars and trucks equipped as outlined above (with the Quadra-jet four barrel carburetor) and built prior to the following serial numbers are involved." Following that statement the bulletin listed some serial numbers of various kinds of cars and trucks, and it included the serial number S-854769 for trucks. The serial number of the pickup truck involved here was S-853740, that being a lower number than the one listed in the bulletin. The lower serial number showed that the truck involved in this suit was built prior to the one bearing the serial number listed in the bulletin, and that it thus was subject to the recall campaign. Lowrey Chevrolet and Bill Lowrey received that bulletin before the truck was sold or transferred to Bill Lowrey on March 12. By reference to that bulletin and to their invoices or sales slips, both Lowrey Chevrolet and Bill Lowrey could have determined that the truck contained a defective part and was subject to the recall campaign. Bill Lowrey had that information at the time it acquired the truck and at the time it sold that vehicle to Davis.
The Campaign Bulletin issued on March 3, 1969, contained the following statement:
"Vehicles involved in this campaign will be identified by serial number listings furnished to the invoiced dealer as soon as they are available. Copies of these listings will also be retained in the zone service departments. Any dealer not receiving a list can assume he has no vehicles assigned under this campaign. All computer materials will be identified by the appropriate Product Campaign code."
Pursuant to the above statement in the Campaign Bulletin, General Motors mailed to Lowrey Chevrolet on March 10, 1969, a "Campaign Card" and an "Initial Dealer Campaign List," which list identified by *231 serial number the particular truck involved in this suit as one which was subject to the recall campaign. The Initial Dealer Campaign List was dated March 5, 1969, but the evidence shows without contradiction that it was mailed to Lowrey Chevrolet on March 10 and that it was not received by Lowrey Chevrolet until after that dealer had sold the truck to Bill Lowrey. At the time that list was made up and mailed, the truck was owned by Lowrey Chevrolet and was listed on the records of General Motors as being an "in-stock" vehicle of that dealer. A "Campaign Card" was sent to Bill Lowrey on March 10, but that card was not accompanied by a list identifying that particular truck as one which was subject to the recall campaign. General Motors did not send a list identifying this truck to Bill Lowrey, of course, because the latter had not even bought the vehicle when the Campaign Card was mailed.
Although Lowrey Chevrolet received the above mentioned information shortly after it had sold the truck to Bill Lowrey, it did not notify the Natchitoches dealer, Bill Lowrey, that that truck was specifically listed as one of those involved in the recall campaign.
The record does not show the exact date on which General Motors was notified of the sale of the truck from Lowrey Chevrolet to Bill Lowrey, or the date it was notified of the sale from Bill Lowrey to Davis. It does show, however, that General Motors was notified of those sales sometime before December 16, 1969, because on that date General Motors sent a formal notice to Wiley T. Davis informing him that the pickup truck which he had purchased from Bill Lowrey Chevrolet, Inc., was involved in a recall campaign, and requesting that Davis advise the Chevrolet Division of General Motors of the particulars of the disposition of the vehicle if Davis no longer owned it. A postage paid reply card was sent to Davis for his use in supplying the requested information. That notice was sent to Davis after the latter had sold the truck to plaintiff Greer, but almost six months before the truck became involved in an accident.
The accident occurred on June 6, 1970. In February, 1971, which was after the accident, General Motors sent a serial number listing to the Natchitoches dealer, Bill Lowrey, showing that the particular truck which was involved in that accident was subject to recall. During that same month, General Motors sent a second notice to Davis, again giving him that information about the truck.
On the above facts, the trial judge concluded that Lowrey Chevrolet was not negligent for failing to notify Bill Lowrey of the defective condition of the truck, because that fact was known to the latter before the accident occurred, and the giving of such a notice by Lowrey Chevrolet would have been vain and useless. He found no causal connection between the accident and the Many dealer's failure to give such a notice to Bill Lowrey. In view of those findings, a summary judgment was rendered dismissing the suit as to Lowrey Chevrolet and its insurer.
Plaintiffs point out on this appeal that the information which Bill Lowrey received from General Motors prior to the accident did not include the specific serial number of the pickup truck which later was involved in the accident, whereas the information received by Lowrey Chevrolet shortly after the truck had been sold to Bill Lowrey did contain that information. They argue that Lowrey Chevrolet was under a duty to inform Bill Lowrey of the fact that this particular truck which it had sold to the latter was subject to the recall campaign, and that its failure to do so was a proximate cause of the accident.
In their arguments, plaintiffs do not excuse Bill Lowrey for its failure to notice and to inform Davis of the recall campaign. They argue that Bill Lowrey also was negligent in failing to check the serial number of the truck which it sold to Davis with the serial number on the Campaign Bulletin which it had received a few days *232 before Davis bought the vehicle. Their position was stated in the written brief filed by plaintiffs in this court, as follows: "This does not relieve the Natchitoches dealer (Bill Lowrey) of its obligation to check the serial number of the truck sold to Mr. Davis in the light of the campaign notice received by all dealers on March 3, 1969, showing that a truck bearing the serial number of the vehicle sold Mr. Davis was involved in the campaign."
It is unnecessary for us to determine in this case whether an automobile dealer who sells a vehicle to another dealer ordinarily is under a duty to pass on to his vendee information which the seller receives after the sale has been completed as to dangerous defects in that vehicle. We have decided that under the facts presented here the outcome of this suit, insofar as it is directed against Lowrey Chevrolet and its insurer, would be the same whether the seller was or was not under such a duty. We thus will make no determination of that legal question now. Assuming that Lowrey Chevrolet ordinarily had a duty to pass on to its vendee information as to dangerous defects acquired by the vendor after the sale had been completed, we believe that under the facts of this case Lowrey Chevrolet was relieved of that duty and is free from any actionable negligence.
In the first place, we agree with the trial judge that the Campaign Bulletin sent to Bill Lowrey on March 3, 1969, adequately informed that dealer of the fact that this particular truck was subject to the recall campaign. Bill Lowrey obtained that information at the same time Lowrey Chevrolet obtained it. Plaintiffs obviously concede that Bill Lowrey should have checked the serial number of the truck with the Campaign Bulletin and thus determined that the truck sold to Davis was defective. Under those circumstances, no useful purpose would have been served by another notice from Lowrey Chevrolet to Bill Lowrey a few days later of a fact which was already known to the latter. We think the trial judge was correct in holding that Lowrey Chevrolet was not negligent in failing to inform its vendee, after receiving the Initial Dealers Campaign List, of the fact that this particular truck was subject to the recall campaign. Certainly, its failure to pass on that information was not a proximate or contributing cause of the accident.
We also agree with the trial judge that there was no causal connection between the accident and the failure of Lowrey Chevrolet to pass on to Bill Lowrey the information contained in the "Initial Dealers Campaign List." The purpose of the notices and information sent out by General Motors was to convey a warning to the owner of the vehicle of the fact that it was defective and was dangerous to drive in that condition, and to offer the owner the opportunity of having the defect repaired without cost. In the instant suit Bill Lowrey Chevrolet timely received that information from General Motors by means of the March 3, 1969, Campaign Bulletin, so it is immaterial whether it also received it from its vendor, Lowrey Chevrolet. If a duty rested on Bill Lowrey to do anything further about the matter after getting that information, then that duty arose when Bill Lowrey received the March 3 Campaign Bulletin. A further notice from his vendor would have accomplished nothing.
The deposition of the president of Bill Lowrey Chevrolet, Inc., shows that that particular dealer, at least, was under the impression that General Motors had the responsibility of notifying the individual owners of all vehicles which were subject to recall, and that the dealer was under no obligation to notify them. He stated that "there was no responsibility for contacting the owners put on the dealers; Chevrolet took full responsibility for that." His statement is supported to some extent by the Chevrolet Service Policies and Procedures Manual, which provides that Chevrolet Central Office will contact all owners-of-record known to Chevrolet via certified mail." Regardless of any obligation which *233 Bill Lowrey Chevrolet may have had to notify purchasers of this defective part, however, it is apparent that if it had received the "Initial Dealer Campaign List" from Lowrey Chevrolet after the truck had been sold to Davis, it would not have passed that information on to Davis or any subsequent purchaser of the vehicle because of its understanding of the General Motors policy.
The evidence also shows that on December 16, 1969, General Motors sent to Wiley T. Davis, who purchased the truck from Bill Lowrey, a formal notice that this specific truck was subject to the recall campaign, and on that notice it gave Davis all of the information which either Lowrey Chevrolet or Bill Lowrey had about that campaign. It appears to us that any duty which may have rested on either of those dealers would have been discharged by passing on all of the information which they had to Davis. Since Davis received that information from General Motors long before the accident occurred, we can see no causal connection between the failure of Lowrey Chevrolet to give information to Bill Lowrey and the happening of the accident.
Plaintiffs argue, finally, that the only question to be determined here is whether there is a genuine issue of material fact, and that on a motion for summary judgment "the function of a court is not to determine the merits of issues involved or whether it is likely or unlikely that plaintiff will recover." There is no merit to that argument.
We agree that the court may not render a summary judgment if there is a genuine issue as to material fact. The burden is on the mover to show there is no such issue, and any doubt must be resolved against the granting of a summary judgment. Jones v. Davis, 233 So.2d 310 (La. App. 2 Cir. 1970). In this case, however, we have found that there is no genuine issue as to material fact. Under the facts which have been established by pleadings, depositions, answers to interrogatories and other receivable evidence, and which we find to be uncontradicted, we conclude that the trial judge correctly rendered a summary judgment dismissing the suit as to Lowrey Chevrolet, Inc., and its insurer, Travelers Indemnity Company. See LSA-C.C.P. art. 966.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.